1   Lewis V. Popovski (*pro hac vice*)
    Michelle Carniaux (*pro hac vice*)
2   Zaed M. Billah (*pro hac vice*)
    Aaron J. Zakem (*pro hac vice*)
3   KENYON & KENYON LLP
    One Broadway
4   New York, NY 10004-1007
    Telephone:  212.425.7200
5   Facsimile:  212.425.5288
    Email: lpopovski@kenyon.com
6   Email: mcarniaux@kenyon.com
    Email: zbillah@kenyon.com
7   Email: azakem@kenyon.com

8   Megan Olesek (SBN 191218)
    KENYON & KENYON LLP
9   1801 Page Mill Road, Suite 210
    Palo Alto, CA 94304-1216
10  Telephone: 650.384.4700
    Facsimile: 650.384.4701
11  Email: molesek@kenyon.com

12  *Attorney for Defendants*
    *Sony Corporation and Sony Electronics Inc.*

13

14                    **UNITED STATES DISTRICT COURT**

15                    **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17   MEDIOSTREAM, INC.,                     Case No. 3:11-cv-02525

18              Plaintiff;                  **SONY CORPORATION AND SONY
                                            ELECTRONICS INC.'S MOTION FOR
19        v.                                SUMMARY JUDGMENT THAT THE
                                            ASSERTED CLAIMS OF THE
20   MICROSOFT CORP., ET AL.,               PATENTS IN SUIT ARE INVALID AS
                                            OBVIOUS**
21              Defendants.
                                            Date:    August 23, 2012
22                                          Time:    1:30 p.m.
                                            Ctrm:    3
23                                          Judge:   Hon. Richard Seeborg

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on August 23, 2012 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th floor at the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, 94102, the Court will hear the motion of defendants Sony Corporation and Sony Electronics Inc. (collectively, "Sony") for summary judgment that the asserted claims of U.S. Patent Nos. 7,009,655 and 7,283,172 (collectively, "Patents-in-Suit") are invalid as obvious.

This motion is filed pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Sony hereby respectfully moves for summary judgment that claims 1-12, 14, and 16-18 of the '655 Patent and claims 1-15 and 19 of the '172 Patent are invalid under 35 U.S.C. § 102(b)/103(a) as obvious over VideoFactory 2.0—a product that was on sale and being sold more than one year prior to the earliest filing date of the Patents-in-Suit—either alone or in combination with either U.S. Patent No. 5,963,262 or U.S. Patent No. 6,549,240.

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT ............................ 2

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS.................................................. 2

     A.    The Scope And Content Of The Prior Art ............................................................ 2

         1.    VideoFactory 2.0 Was Sold In The United States Prior To The
              Critical Date ............................................................................................. 2

         2.    The Features And Functionality Of VideoFactory 2.0 ............................. 3

         3.    The Prior Art Ke And Reitmeier Patents Disclose Converting
              Video Information In The Claims "Order Of Steps." ................................. 4

             a.    The Ke Patent .............................................................................. 4

             b.    The Reitmeier Patent.................................................................. 5

     B.    The Asserted Claims Require Resizing Before Adjusting The Frame
         Rate ...................................................................................................................... 6

     C.    The Differences Between The Prior Art And The Claims At Issue......................... 7

     D.    The Level Of Ordinary Skill In the Art................................................................. 10

IV.   ARGUMENT ................................................................................................................. 10

     A.    Legal Standards ................................................................................................... 10

     B.    VideoFactory 2.0 Is Prior Art To The Patents-In-Suit............................................ 12

     C.    VideoFactory 2.0 Renders The Asserted Claims Invalid As Obvious In
         View Of The Ke And Reitmeier Patents................................................................. 13

V.    CONCLUSION ............................................................................................................. 14

**TABLE OF AUTHORITIES**

**CASES**

*Al-Site Corp. v. VSI Int'l, Inc.*,
    174 F.3d 1308 (Fed. Cir. 1999) ........................................................ 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................... 10

*Ball Aerosol And Specialty Container, Inc. v. Limited Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009) ........................................................ 11

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988) ...................................................... 12

*eBay Inc. v. Kelora sys., LLC*,
    No. C 10-4947, 2012 U.S. Dist. LEXIS 70636 (N.D. Cal. May 21, 2012) ...................... 11

*Friskit, Inc. v. RealNetworks, Inc.*,
    499 F. Supp. 2d 1145 (N.D. Cal. 2007) ................................................ 12, 13

*Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*,
    618 F.3d 1294 (Fed. Cir. 2010) .............................................. 2, 11, 14

*KSR Int'l Co. v. Teleflex, Inc.*,
    550 U.S. 398 (2007) ...................................................... 2, 11, 12, 13, 14

*Linear Tech Corp. v. Micrel, Inc.*,
    275 F.3d 1040 (Fed. Cir. 2001) ...................................................... 12

*Platronics, Inc. v. Aliph, Inc.*,
    No. C09-1714, 2012 U.S. Dist. LEXIS 40172 (N.D. Cal. Mar. 23, 2012) ...................... 11

*Seiko Epson Corp. v. Coretronic Corp.*,
    No. C 06-6946, 2010 U.S. Dist. LEXIS 124289 (N.D. Cal. Nov. 23, 2010) .............. 11, 14

*Teknowledge Corp. v. Cellco P'ship*,
    626 F. Supp. 2d 1027 (N.D. Cal. 2009) ................................................ 10, 11

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010) ...................................................... 11

**STATUTES**

35 U.S.C. § 102(b) .................................................................. 1, 2, 4, 12

35 U.S.C. § 102(e) ........................................................................................................... 5

35 U.S.C. § 103(a) ..................................................................................................... 1, 11

**RULES**

FED. R. CIV. P. 56(c)...................................................................................................... 10

FED. R. CIV. P. 56(e)(2) ................................................................................................ 10

## I.   INTRODUCTION

Plaintiff MedioStream, Inc. ("MedioStream") asserts U.S. Patent No. 7,009,655 ("'655 Patent," Ex. A).[1] and U.S. Patent No. 7,283,172 ("'172 Patent," Ex. B) against Defendants, including Sony Corporation and Sony Electronics Inc. (collectively, "Sony"). The Asserted Claims[2] of the '655 Patent and the '172 Patent (collectively, "Patents-in-Suit") are invalid under 35 U.S.C. § 102(b)/103(a) as obvious over VideoFactory 2.0 either alone or in combination with either U.S. Patent No. 5,963,262 ("Ke Patent," Ex. C) or U.S. Patent No. 6,549,240 ("Reitmeier Patent," Ex. D).

Generally, the Patents-in-Suit are directed to software applications for converting video information from an incoming format to an outgoing format. For example, the software applications described in the Patents-in-Suit can be used to convert video information from a digital camcorder format (DV) into a format associated with the VCD optical disc format (VCD MPEG-1). The prior art VideoFactory 2.0 software product meets each and every limitation of each of the Asserted Claims except for the order in which the claimed resizing and frame-rate adjustment limitations occur as construed by the Court. (*See* Dkt. No. 442 at 19). As set forth in the prior art and discussed below, it was known to resize first and then adjust the frame rate of video as required by the Asserted Claims. The selection of which order to implement these two known steps is merely a design choice, well within the ability of a person of ordinary skill in the art seeking known benefits or results from a simple substitution. The selection of one approach

---

[1]   All exhibit citations are to the exhibits attached to the Declaration of Zaed M. Billah In Support of Sony's Motion For Summary Judgment that the Asserted Claims of the Patents in Suit are Invalid as Obvious ("Billah Decl."), filed concurrently with this motion.

[2]   "Asserted Claims" refers to claims 1-12, 14, and 16-18 of the '655 Patent and claims 1-15 and 19 of the '172 Patent, each of which MedioStream is asserting against Sony.

from a finite number of identified and predictable options is not a patentable invention. *See Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1302 (Fed. Cir. 2010).

Indeed, MedioStream's own expert opines that performing frame rate adjustment prior to resizing—as VideoFactory 2.0 does—is equivalent to performing those steps in reverse order as claimed.[3]  Thus, VideoFactory 2.0 either alone or in combination with prior art disclosing the use of these steps in the claimed order renders the Asserted Claims obvious under the analysis set forth in *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).

## II.    STATEMENT OF THE ISSUE TO BE DECIDED BY THE COURT

The sole issue presented by this motion is:  Are the Asserted Claims invalid as obvious when the only claim limitation missing in VideoFactory 2.0 is a known design variation that provides known and predictable benefits?

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Scope And Content Of The Prior Art

#### 1.    VideoFactory 2.0 Was Sold In The United States Prior To The Critical Date.

A Wisconsin-based company called Sonic Foundry, Inc. ("Sonic Foundry")[4] launched the VideoFactory 2.0 software product on or about July 17, 2001.[5]  (Ex. F at 33:4-7; Ex. G)  Another

---

[3]    MedioStream's expert is incorrect insofar as the doctrine of equivalents is concerned, because, among other things, if the frame rate adjustment and resizing are performed in the exact opposite order of what is required by the claim, then the process would not take place in substantially the same way as it is claimed.  Nevertheless, MedioStream has relied on its expert's position in this litigation, and it cannot disclaim that position whenever convenient in order to oppose this motion.

[4]    In 2003, Sony acquired the division of Sonic Foundry, Inc. that developed VideoFactory 2.0.  Accordingly, Sony has produced all relevant documents concerning VideoFactory 2.0 to MedioStream, including product samples, source code, and literature.

[5]    The earliest application which led to the Patents-in-Suit was filed on July 23, 2002.  (Exs. A, B).  Accordingly, July 23, 2001 is the one year critical date under 35 U.S.C. § 102(b).

Wisconsin-based company called The Douglas Stewart Company ("DSC") was one of the first purchasers of VideoFactory 2.0.  (Ex. F at 39:17-40:3, 50:10-13; Exs. H, I).  On July 17, 2001, DSC sent Sonic Foundry a purchase order for twenty units of VideoFactory 2.0.  (*Id*.).  On or before July 20, 2001, Sonic Foundry sent an invoice to DSC in response to that purchase order. (Ex. F at 40:13-41:11).

### 2.      The Features And Functionality Of VideoFactory 2.0

VideoFactory 2.0 is a stand-alone software product that allows a user to import, edit, and convert video information from one format to another.  (*See* VideoFactory 2.0 packaging scans, attached as Ex. R).  VideoFactory 2.0 provides a graphical user interface for importing and editing many different types of video files to create a customized movie.  Afterwards, VideoFactory 2.0 can convert the movie into an output file having the user's selected format, frame size, and frame rate.  For example, VideoFactory 2.0 can convert video information in a variety of formats (e.g., AVI and QuickTime) into the MPEG-1 format that is compliant with the VCD standard.  Indeed, VideoFactory 2.0 can convert video into the proper format and then write the converted video to an optical disc.  As described below, much of the relevant functionality of VideoFactory 2.0 can be readily observed by operating the software application:[6]

- •      VideoFactory 2.0 allows a user to input video information in an incoming format such as AVI.  (Billah Decl. at ¶¶ 6-9; Ex. Q at 35-36); and

- •      VideoFactory 2.0 then allows a user to input a choice of either DVD or VCD as the desired output media format and either NTSC (the TV standard used in the U.S.) or PAL (the TV standard used in Europe) as the desired TV standard. (Billah Decl. at ¶¶ 13-22).

---

[6]    Sony respectfully requests a hearing for oral argument on this motion.  At the hearing, Sony intends to demonstrate the relevant functionality of VideoFactory 2.0.

Thus, a user can select VCD as the output media format and PAL as the desired TV standard. After the user makes these two choices, VideoFactory 2.0 will:

- adjust the frame rate of the inputted video information to the 25 fps frame rate that is associated with PAL. (Billah Decl. at ¶¶ 8-9, 24-28);

- resize the inputted video information to the 352x288 frame size that is associated with VCD and PAL. (Billah Decl. at ¶¶ 8-9, 24-28); and then

- process the resized and frame-rate-adjusted video information into a file in the VCD MPEG1 presentation format. (Billah Decl. at ¶¶ 8-9, 24-28).

Additional functionality of VideoFactory 2.0 relevant to the validity of the Asserted Claims is identified in detail in the claim charts attached as Exhibit L.[7]

### 3. The Prior Art Ke And Reitmeier Patents Disclose Converting Video Information In The Claimed "Order Of Steps."

#### a. The Ke Patent

The Ke Patent issued on October 5, 1999 and is therefore prior art to the Patents-in-Suit under 35 U.S.C. § 102(b). (Ex. C). Similar to the Patents-in-Suit, the Ke Patent is directed to a system for converting video information from one format to another format using a conversion process which includes resizing and adjusting the frame rate of the video information. (Ex. C at Abstract, Fig. 1B, 4:15-7:67). As shown below, the system disclosed in the Ke Patent resizes[8] video information prior to adjusting the frame rate of that video information:

---

[7]    Where appropriate, these claim charts cite to the expert reports submitted by Dr. Alan C. Bovik ("Bovik Report," Ex. J) and Jeffrey Rowe ("Rowe Report," Ex. K). Dr. Bovik's and Mr. Rowe's reports cover more aspects of VideoFactory 2.0 than those relied on for purposes of this motion for summary judgment of invalidity. As such, Exhibit L specifies the functionalities of VideoFactory 2.0 that are pertinent to this motion.

[8]    As used in the Ke Patent, the term "scaling" refers to resizing. (*See, e.g.*, Ex. C at 1:43-57 ("To make this conversion, PC graphics may need to be scaled so that the resolution of the PC graphics image will match the resolution used by the TV. Scaling is desirable so that little or no information is lost at the edge of the TV screen . . . . Unless the PC graphics image is scaled to (continued…)

**Ke Patent at Fig. 1B. (Red Indications Added)**

b.      **The Reitmeier Patent**

The Reitmeier Patent was filed on February 28, 2000 and issued on April 15, 2003, and is therefore prior art to the Patents-in-Suit under 35 U.S.C. § 102(e).  (Ex. D).  Similar to the Patents-in-Suit and the Ke Patent, the Reitmeier Patent is directed to an apparatus for converting video information from one format to another format using a conversion process which includes resizing and adjusting the frame rate of the video information.  (*See* Ex. D at Fig. 1, 2:45-49, 4:61-5:65, claims 1, 3).  As shown below, the apparatus disclosed in the Reitmeier Patent resizes video information prior to adjusting the frame rate of that video information:

the TV format resolution, only part of the PC graphics image will be visible on the TV screen . . . .")).



**Reitmeier Patent at Fig. 1. (Red Indications Added)**

As described by claim 3 of the Reitmeier Patent, element 160 in Fig. 1 is a "<u>frame rate converter</u> compris[ing] a frame buffer for receiving said digital video signal according to a first addressing rate and providing a buffered digital video signal according to a second addressing rate, said second addressing rate being an integer multiple of said first addressing rate." (Ex. D at claim 3) (emphasis added).

    **B.**    **The Asserted Claims Require Resizing Before Adjusting The Frame Rate**

The Patents-in-Suit relate to an integrated computer software application for computers that processes video consistent with standardized formats (e.g., DVD, VCD, and SVCD) into formats that can be written to optical disk media. Specifically, the Patents-in-Suit describe and claim an integrated solution for changing the format, frame size, and frame rate of an input video file so that input video in one of many different formats can be converted to a standardized output format. (Ex. A at 3:23-53).

As construed by the Court, each of the Asserted Claims "require[s] resizing of the video before changing its frame rate."  (Dkt. No. 442 at 19).  Claim 1 of the '655 patent is exemplary and requires this "order of steps:"

> a code directed to **resizing**[9] **the raw video information** in the uncompressed format **into a size associated with the desired output media format and the desired TV standard**;
>
> a code directed to **adjusting** the uncompressed format **in the size associated with the desired output media format and desired TV standard** to a frame rate associated with the desired TV standard;

(Ex. A at claim 1) (emphasis added).

**C.     The Differences Between The Prior Art And The Claims At Issue**

As shown in Exhibit L and described below, the only claim limitation missing from VideoFactory 2.0 is the "order of steps."  Claim 1 of the '655 patent is exemplary and VideoFactory 2.0 meets each and every other limitation of this claim as shown below:

| '655 Patent Claim 1 | VideoFactory 2.0 |
|---|---|
| 1. A system for converting video information from an incoming format to an outgoing format using an integrated computer software application, the integrated computer software application being provided on one or more memories, the one or more memories including: | VideoFactory 2.0 is an integrated computer software application.  When VideoFactory 2.0 is loaded on a personal computer, the computer is a system for converting video information from an incoming format (e.g., AVI) to an outgoing format (e.g., VCD MPEG1) using an integrated computer software application which is provided on the computer's memory.<br><br>*See* Bovik Report (Ex. J) at ¶¶ 122-24; Billah Decl. at ¶¶ 6-28. |

_____

[9]   The Court construed the term "resizing" to mean "changing the size (height/width) of the video."  (Dkt. No. 442 at 15).

| '655 Patent Claim 1 | VideoFactory 2.0 |
|---|---|
| a code directed to receiving video information in a first format; | VideoFactory 2.0 allows a user to input video information in a variety of formats, e.g., AVI.<br><br>*See* Billah Decl. at ¶¶ 6-9; Ex. Q at 35-36. |
| a code directed to receiving a desired output media format based upon a first input; | VideoFactory 2.0 allows a user to select VCD as the desired output media format from a menu that includes DVD and VCD as available options.<br><br>*See* Billah Decl. at ¶¶ 13-22. |
| a code directed to receiving a desired TV standard based upon a second input; | VideoFactory 2.0 also allows a user to select PAL as the desired TV standard from a menu that includes NTSC and PAL as the available options for VCD.<br><br>*See* Billah Decl. at ¶¶ 13-22. |
| a code directed to converting the video information in the first format to raw video information [in] an uncompressed format using a decoding process; | VideoFactory 2.0 decodes the incoming AVI video information to raw video information in an uncompressed RBG format.<br><br>*See* Billah Decl. at ¶¶ 24-28; Rowe Report (Ex. K) at ¶¶ 337-46. |
| a code directed to resizing the raw video information in the uncompressed format into a size associated with the desired output media format and the desired TV standard; | When resizing is required, VideoFactory 2.0 will resize the raw video information to the 352x288 frame size associated with the desired VCD output media format and the desired PAL TV standard.<br><br>*See* Billah Decl. at ¶¶ 8-9, 24-28; Rowe Report (Ex. K) at ¶¶ 347-57. |

| '655 Patent Claim 1 | VideoFactory 2.0 |
|---|---|
| a code directed to adjusting the uncompressed format in the size associated with the desired output media format and the desired TV standard to a frame rate associated with the desired TV standard; | When frame rate adjustment is required, VideoFactory 2.0 will adjust the frame rate of the raw video information to the 25 fps frame rate associated with the desired PAL TV standard.<br><br>While VideoFactory 2.0 performs both resizing and frame rate adjustment, VideoFactory 2.0 performs frame-rate adjustment prior to resizing.<br><br>*See* Billah Decl. at ¶¶ 8-9, 24-28; Rowe Report (Ex. K) at ¶¶ 347-57. |
| a code directed to processing the uncompressed format in the size and the frame rate into an elementary video stream; and | VideoFactory 2.0 processes (i.e., encodes) the resized and frame-rate adjusted raw video information into an MPEG-1 elementary video stream.<br><br>*See* Billah Decl. at ¶¶ 24-28; Rowe Report (Ex. K) at ¶¶ 358-60. |
| a code directed to processing the elementary video stream with audio information in the desired output media format and the desired TV standard to form video and audio information in a presentation format based upon the desired output media format and the desired TV standard. | VideoFactory 2.0 processes (i.e., multiplexes) the MPEG-1 elementary video stream with audio information in the desired VCD output media format and the desired PAL TV standard to form video and audio information in a VCD-compliant MPEG-1 file based upon the desired VCD output media format and the desired PAL TV standard. Accordingly, this MPEG-1 file will have the following parameters:<br><br>Frame Size: 352x288<br>Frame Rate: 25 fps<br>Audio Frequency: 44.1 Khz<br><br>The VCD-compliant MPEG-1 file is in the "presentation format" as defined by claim 8 of the '655 patent and claim 8 of the '172 patent ("VCD MPEG1").<br><br>*See* Billah Decl. at ¶¶ 8, 24-28; Rowe Report (Ex. K) at ¶¶ 361-63. |

As best as Sony can understand from MedioStream's interrogatory responses, MedioStream does not dispute the facts upon which Sony relies above and in Exhibit L.[10] Furthermore, as described above, video conversion in the claimed "order of steps" was well known in the art.

### D.    The Level Of Ordinary Skill In The Art

MedioStream's infringement expert, Dr. James Foley, has opined that a person of ordinary skill in the pertinent art would have "a bachelors degree in Computer Science, Computer Engineering, Electrical Engineering, or a related discipline teaching the concepts of software design, with at least one course on video including compression methods, video standards, and another materials on digital signal processing, or the experiential equivalent of the overall education leading to such a degree, and would have three to five years of experience designing, implementing, or similar experience dealing with video systems.  ("Foley Report," Ex. O at ¶ 64). Sony adopts the position of Dr. Foley for purposes of this motion, and as such, there is no material dispute as to the level of ordinary skill in the art.  *See, e.g.*, *Teknowledge Corp. v. Cellco P'ship*, 626 F. Supp. 2d 1027, 1038 (N.D. Cal. 2009).

## IV.    ARGUMENT

### A.    Legal Standards

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[10]    As best as can be deduced, MedioStream's only asserted basis for contending that VideoFactory 2.0 does not satisfy any Asserted Claim may be a belief that each Asserted Claim requires outputs to <u>multiple</u> "presentation formats."  (*See* Ex. M at 11; Ex. N at 55-57).  To the extent MedioStream raises such an interpretation of the Asserted Claims, Sony disagrees.  The Asserted Claims require only a <u>single</u> "presentation format," i.e., the one that is "based upon <u>the</u> desired output media format and <u>the</u> desired TV standard."  (*See e.g.*, Ex. A at claim 1 (emphasis added)).

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party moving for summary judgment has the burden of demonstrating that no dispute over a material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  When the moving party meets this burden, then the non-moving party must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2).  Only a genuine dispute over a material fact—a fact which might affect the outcome of the suit under the governing substantive law—will preclude summary judgment. *Anderson*, 477 U.S. at 248.

A patent may be shown to be invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a).  To overcome the presumption of validity, a party seeking to invalidate a patent must present clear and convincing evidence of invalidity.  *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).

"Obviousness is a question of law based on underlying findings of fact."  *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237 (Fed. Cir. 2010).  These "underlying factual inquiries include (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others."  *Id.*  Where, as here, "all of the limitations of the patent were present in the prior art references, and the invention was addressed to a 'known problem,' '*KSR* . . . <u>compels</u> the grant of summary judgment of obviousness.'"  *Id.* at 1240 (emphasis added) (citing *Ball Aerosol And Specialty Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 993 (Fed. Cir. 2009)); *see also eBay Inc. v. Kelora sys., LLC*, No. C 10-4947, 2012 U.S. Dist. LEXIS 70636, at *36 (N.D. Cal. May 21, 2012); *Platronics, Inc. v. Aliph, Inc.*, No. C09-1714, 2012 U.S. Dist. LEXIS 40172, at *25 (N.D. Cal. Mar. 23, 2012);

*Seiko Epson Corp. v. Coretronic Corp.*, No. C 06-6946, 2010 U.S. Dist. LEXIS 124289, at *13 (N.D. Cal. Nov. 23, 2010); *Teknowledge*, 626 F. Supp. 2d at 1037.  Moreover, where the only difference between a claim and the prior art is a limitation that is selected from a "finite number of identified, predictable solutions," the claim is invalid as a matter of law.  *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1302 (Fed. Cir. 2010) (granting judgment as a matter of law on obviousness, noting that "[b]ottom versus top is exactly the type of 'finite number of identified, predictable solutions' that justifies a legal conclusion that the result, when expected, is 'the product not of innovation but of ordinary skill and common sense.'") (citing *KSR*, 550 U.S. at 421).

**B.  VideoFactory 2.0 Is Prior Art To The Patents-In-Suit.**

Sonic Foundry's act of sending an invoice in response to DSC's purchase order operated as an acceptance of DSC's purchase order for VideoFactory 2.0.  *See Linear Tech Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1053 (Fed. Cir. 2001) ("In order to be effective, an acceptance must *objectively* manifest the offeree's assent.") (emphasis in original).  Thus, VideoFactory 2.0 was on sale and sold prior to the July 23, 2001 critical date and is therefore prior art under § 102(b).

**C.  VideoFactory 2.0 Renders The Asserted Claims Invalid As Obvious In View Of The Ke And Reitmeier Patents.**

As discussed above and shown in Exhibit L, VideoFactory 2.0 meets each and every limitation of each Asserted Claim except for the "order of steps."

VideoFactory 2.0 in combination with the Ke Patent or the Reitmeier Patent renders the Asserted Claims obvious because each of the Patents-in-Suit "'simply arranges old elements with each performing the same function it had been known to perform' and yields no more than one would expect from such an arrangement." *Friskit, Inc. v. RealNetworks, Inc.*, 499 F. Supp. 2d 1145, 1149 (N.D. Cal. 2007) (citing *KSR*, 127 S. Ct. at 1727, 1740).  Here, the Patents-in-Suit

themselves teach that known <u>conventional</u> video conversion techniques would resize and adjust

the frame rate of video information in an incoming format to that of an outgoing format as

claimed.  (Ex. A at Fig. 1, 5:4-20) ("Fig. 1 is a simplified diagram of a <u>conventional</u> method 100

of video editing and conversion. . . . The method edits, resizes, and adjusts (step 103) the frame

rate of the video information.") (emphasis added); *see Constant v. Advanced Micro-Devices, Inc.*,

848 F.2d 1560, 1570 (Fed. Cir. 1988) ("A statement in a patent that something is in the prior art is

binding on the applicant and patentee for determinations of anticipation and obviousness.").  As

also shown in VideoFactory 2.0, the Ke Patent, and the Reitmeier Patent, there are limited ways

to accomplish resizing and frame rate adjustment—namely, one could resize video <u>prior</u> to

adjusting its frame rate, or resize video <u>after</u> adjusting its frame rate.  (*See* Ex. K at ¶¶ 355, 357;

Ex. C at Fig. 1B, 4:15-7:67; Ex. D at Fig. 1, 4:61-5:65, claims 1, 3).  Thus, a person of ordinary

skill in the art could have chosen either to use the known "resizing first" option (as disclosed in

the Ke and Reitmeier Patents and claimed in the '655 patent) or the known "adjusting first"

option (as in VideoFactory 2.0).  Therefore, VideoFactory 2.0 itself, or in combination with either

the Ke Patent or the Reitmeier Patent renders the Asserted Claims obvious under the analysis set

forth by the Supreme Court for this reason alone.  *KSR*, 550 U.S. at 417; *Friskit*, 499 F. Supp. 2d

at 1152 ("[W]hen there are a finite number of 'identified, predictable solutions' a person of

ordinary skill in the art will have reason to pursue these options.") (citing *KSR*, 127 S. Ct. at

1742); *see also* Ex. J at ¶¶ 138-140, 142.

Furthermore, the inventor of the Patents-in-Suit, John Huang, testified that, for any given

input file and desired output file, there is a benefit to using either the "resizing first" option or the

"adjusting first" option.  (Ex. E at 200:20-205:23).  Specifically, Mr. Huang confirms that when

converting from a higher frame rate to a lower frame rate (e.g., 60 fps to 29.97 fps), the

conversion process requires less computational power if the frame rate adjustment step is

1   performed first. (*Id.*). On the other hand, when converting from a lower frame rate to a higher

2   frame rate (e.g., 15 fps to 29.97 fps), the conversion process requires less computational power if

3   the resizing step is performed first. (*Id.*). Thus, Mr. Huang confirms that a practitioner would

4   select the sequence that provided the most optimal results for the given design criteria.

5   Furthermore, the choice to select either resizing first or frame-rate adjustment first is merely

6   selecting one known approach from a finite number of approaches having predictable outcomes.

7   As such, it would be obvious to one of ordinary skill in the art to perform the claimed "resizing"

8   and "adjusting" steps in that order as taught by the Ke Patent or the Reitmeier Patent. *See*

9   *generally KSR*, 550 U.S. at 418-21; *Geo M. Martin*, 618 F.3d at 1302.

10

11      That the Asserted Claims are obvious is further demonstrated by the opinions of

12  MedioStream's own expert regarding the application of the doctrine of equivalents with respect to

13  the "order of steps." Indeed, Dr. Foley states that performing the steps in either order performs

14  the "identical" function in the "same way" with the "essentially identical" result:

15

16              There is <u>no difference</u>, and definitely no substantial difference,
                between adjusting the frame rate before or after adjusting the video
17              size. <u>The function performed is identical in both cases</u>. The
                function of these claims elements is to create video frames with a
18              frame size and frame rate corresponding to the output media format
                and video presentation standard selected by the user. Adjustment is
19              accomplished the <u>same way</u> because the same code is used,
                regardless of the order in which it is performed. <u>The result is</u>
20              <u>essentially identical in both cases</u>. The resulting video has video
                frames with a size consistent with the desired TV standard and
21              desired output media format, and a frame rate consistent with the
                desired TV standard.
22

23  Ex. O at ¶ 241; *see also* Ex. O at ¶ 310. As such, Dr. Foley concedes that reversing the "order of

24  steps" in VideoFactory 2.0 would have been obvious. *See Seiko Epson Corp.*, 2010 U.S. Dist.

25  LEXIS 124289 at *11 ("The 'combination of familiar elements according to <u>known methods</u>' is

26  likely to be obvious when it 'does no more than yield <u>predictable results</u>.'" (citing *KSR*, 550 U.S.

27  at 416)) (emphasis added).

28

1   Furthermore, MedioStream has failed to identify any evidence regarding secondary

2   considerations to support nonobviousness in response to Sony's interrogatory seeking such

3   evidence.  (Ex. N at 79-84).  Therefore, there are no secondary considerations that support

4   nonobviousness.

5

6   **V.       CONCLUSION**

7   For the foregoing reasons, Sony respectfully requests that the Court grant summary

8   judgment that the Asserted Claims are invalid as obvious.

9                                                Respectfully submitted,

10  Dated:  July  12, 2012          By:    /s/ *Zaed M. Billah*
                                            Lewis V. Popovski (*pro hac vice*)
11                                          Michelle Carniaux (*pro hac vice*)
                                            Zaed M. Billah (*pro hac vice*)
12                                          Aaron J. Zakem (pro hac vice)
                                            KENYON & KENYON LLP
13                                          One Broadway
                                            New York, NY 10004-1007
14                                          Telephone:  212.425.7200
                                            Facsimile:  212.425.5288
15                                          Email: lpopovski@kenyon.com
                                            Email: mcarniaux@kenyon.com
16                                          Email: zbillah@kenyon.com

17                                          Megan Olesek (SBN 191218)
                                            KENYON & KENYON LLP
18                                          1801 Page Mill Road, Suite 210
                                            Palo Alto, CA 94304-1216
19                                          Telephone: 650.384.4700
                                            Facsimile: 650.384.4701
20                                          Email: molesek@kenyon.com

21                                          *Attorneys for Defendants*
                                            *Sony Corporation and Sony Electronics Inc.*
22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

    I, Liberty  Quan, declare:

3

    I am a citizen of the United States and employed in Santa Clara County, California.  I am

4

over the age of eighteen years and not a party to the within-entitled action.  My business address

5

is 1801 Page Mill Road, Suite 210, Palo Alto, California  94304-1216.  On July 12, 2012, I served

6

a copy of the within document(s):

7

- **SONY'S MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF THE PATENTS IN SUIT ARE INVALID AS OBVIOUS**

8

9

- **DECLARATION OF ZAED M. BILLAH IN SUPPORT OF ADMINISTRATIVE MOTION TO FILE EXHIBITS UNDER SEAL IN SUPPORT OF SONY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY WITH EXHIBITS A-R (WHICH INCLUDES EXHIBITS E, K, M, N, O SUBMITTED UNDER SEAL)**

10

11

- **[PROPOSED] ORDER GRANTING SONY CORPORATION AND SONY ELECTRONICS INC.'S MOTION FOR SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF THE PATENTS IN SUIT ARE INVALID AS OBVIOUS**

12

13

    ☒    by transmitting via electronic mail the document(s) listed above to the email address set forth below on this date, July 12, 2012

14

15

**Byron W. Cooper**

16

Email: bcooper@teklaw.co

17

**Elizabeth DeRieux**
Email: ederieux@capshawlaw.com

18

19

**Stephen D. Susman**
Email: ssusman@susmangodfrey.com

20

21

**Brooke Ashley-May Taylor**
Email: btaylor@susmangodfrey.com

22

23

**Charles Ainsworth**
Email: charley@pbatyler.com

24

25

**Daymon Jeffrey Rambin**
Email: jrambin@capshawlaw.com

26

**Frederick G. Michaud**
Email: fmichaud@capshawlaw.com

27

28

**Joseph S. Grinstein**
Email: jgrinstein@susmangodfrey.com

KENYON & KENYON
LLP
PALO ALTO

PROOF OF SERVICE

1

2 **Max Lalon Tribble , Jr.**
Email: mtribble@susmangodfrey.com

3
**Robert Christopher Bunt**
4 Email: rcbunt@pbatyler.com

5 **S. Calvin Capshaw**
**Email:** ccapshaw@capshawlaw.com
6

7 **Andrew Thompson Gorham**
Email: tgorham@pbatyler.com

8
**Robert M Parker**
9 Email: rmparker@pbatyler.com

10 **Sidney Calvin Capshaw , III**
Email: ccapshaw@capshawlaw.com
11

12 **Brian G. Bieluch**
Email: bbieluch@cov.com
13

14 **Christina Olson**
Email: colson@cov.com
15

**George Frank Pappas**
16 Email: gpappas@cov.com

17 **Melissa Richards Smith**
Email: Melissa@gillamsmithlaw.com
18

19 **Ramtin Taheri**
Email: rtaheri@cov.com
20

**Ranganath Sudarshan**
21 Email: rsudarshan@cov.com

22 **Robert Joseph Williams**
Email: rwilliams@cov.com
23

24 Roger A. Ford
Email: rford@cov.com
25

26 **Scott Schrader**
Email: sschrader@cov.com
27

**William Edward Zapf , III**
28 Email: wzapf@cov.com

KENYON & KENYON
LLP
PALO ALTO

PROOF OF SERVICE          - 2 -          3:11-CV-02525-RS

1

2 **Danny Scot Ashby**
Email: danny.ashby@klgates.com

3
**Elaine Y. Chow**
4 Email: elaine.chow@klgates.com

5 **Holly Anne Hogan**
Email: holly.hogan@klgates.com
6

7 **Lei Howard Chen**
Email: howard.chen@klgates.com

8
**Steve T Tsai**
9 Email: stsai@lawyer4biz.com

10
**Timothy Paar Walker**
11 Email: timothy.walker@klgates.com

12 **Mark Christopher Scarsi**
Email: mscarsi@milbank.com
13

14 **Caitlin Hawks**
Email: chawks@milbank.com

15
**Chris Holm**
16 Email: cholm@milbank.com

17 **Hannah Lynn Cannom**
Email: hcannom@milbank.com
18

19 **Tammy Pennington Rhodes**
Email: tammy.pennington@bakerbotts.com
20

21 **Joshua Jamison Parker**
Email: josh.parker@bakerbotts.com

22
**Michael Charles Smith**
23 Email: ms@rothfirm.com

24 **Roger Fulghum**
Email: roger.fulghum@bakerbotts.com
25

26 **Joshua Michael Masur**
Email: masur@turnerboyd.com

27
**Joshua M Masur**
28 Email: masur@turnerboyd.com

KENYON & KENYON
LLP
PALO ALTO

PROOF OF SERVICE          - 3 -          3:11-CV-02525-RS

1

2   **Karen I Boyd**
    Email: boyd@turnerboyd.com

3
    **Christina Rose Hollander**
4   Email: chollander@fbm.com

5   **Deborah J Race**
    Email: drace@icklaw.com
6

7   **Matthew Adam Hollander**
    Email: mhollander@fbm.com
8

9   **Noel Andrew Leibnitz**
    Email: aleibnitz@fbm.com

10
    **Otis W Carroll , Jr.**
11  Email: Fedserv@icklaw.com

12  **Roderick Manley Thompson**
    Email: rthompson@fbm.com
13

14  **Joshua Jamison Parker**
    Email: josh.parker@bakerbotts.com
15

16  **Michael Kenneth Plimack**
    Email: mplimack@cov.com

17
    **Marvin Craig Tyler**
18  Email: ctyler@wsgr.com

19  **Monica Mucchetti Eno**
    Email: monica.eno@tensegritylawgroup.com
20

21

22      I declare that I am employed in the office of a member of the bar of this court at whose
    direction the service was made.
23

24      Executed on July 12, 2012, at Palo Alto, California.

25

26                                              _____
                                                         Liberty Quan
27

28