**FILED**

FEB 5 2013

**RICHARD W. WIEKING**
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIOSTREAM, INC., | Case No.: C-11-02525 RS |
| Plaintiff, | **ORDER GRANTING THE MOTION CONTAINED IN DOCKET NUMBER 746; DENYING THE MOTIONS CONTAINED IN DOCKET NUMBERS 730, 726, 732, AND 750; AND GRANTING IN PART AND DENYING IN PART THE MOTIONS CONTAINED IN DOCKET NUMBERS 727 AND 759** |
| v. | |
| MICROSOFT CORPORATION, et al., | |
| Defendants. | |
| | **FILED UNDER SEAL** |

## I. INTRODUCTION

Before the Court are seven Motions arising out of discovery between Plaintiff MedioStream, Inc. ("Plaintiff") and Defendants Acer America Corp. ("Acer"), Apple Inc. ("Apple"), Asus Computer International, Inc. ("Asus"), Dell, Inc., Gateway, Inc. ("Gateway"), Sonic Solutions ("Sonic"), Sony Electronics Inc., Sony Corporation, and Microsoft Corporation ("Microsoft") (collectively, "Defendants").

Three of the Motions are joined by all Defendants. These Motions seek leave to amend and/or supplement their invalidity contentions. For ease of reference, these Motions will be referred to by their docket numbers, which are Docket Number 727, Docket Number 730, and Docket Number 746.

The fourth Motion is Defendant Microsoft's Motion to Strike Portions of the Expert Report of Dr. James Foley ("Motion to Strike").

The remaining three Motions are (1) Defendant Microsoft's Motion for Leave to File a Motion for Reconsideration of Order Granting Amendment of Infringement Contentions ("Microsoft's Motion for Reconsideration"); (2) Defendants Acer and Gateway's Motion for Leave to File a Motion



United States District Court
Northern District of California

for Reconsideration of Order Granting Amendment of Infringement Contentions ("Acer's Motion for Reconsideration"); and (3) Defendant Asus's Motion for Leave to File a Motion for Reconsideration of Order Granting Amendment of Infringement Contentions ("Asus's Motion for Reconsideration").

For the following reasons, the Court GRANTS Docket Number 746, DENIES Docket Number 730 and the three Motions for Reconsideration, and GRANTS IN PART AND DENIES IN PART Docket Number 727 and Microsoft's Motion to Strike.

## II.   BACKGROUND

### A.   Docket Number 727

#### 1.   Procedural History

This action originated in the United States District Court for the Eastern District of Texas ("transferor court"). Defendants initially moved the transferor court for the amendments requested in Docket Number 727 on October 12, 2010. Docket Number ("Dkt. No.") 727, 1 n.2 (citing Dkt. No. 463). Fact discovery in this case closed on October 15, 2010. On December 6, 2010, while the initial motion was still pending, the United States Court of Appeals for the Federal Circuit transferred the case to the Northern District of California. *Id.* (citing Dkt. No. 551). On September 1, 2011, the District Court vacated all then-pending motions and indicated that the parties should re-file those motions upon the resumption of litigation activity on July 2, 2012. *Id.* (citing Dkt. No. 676). Defendants filed Docket Number 727 on July 5, 2012.

#### 2.   Defendants' Motion to Supplement Invalidity Contentions

In Docket Number 727, Defendants seek (1) to supplement their invalidity contentions with citations to the source code of a prior art product referred to as MPEG Power Professional 2.0 ("MPP2"); and (2) to add product manual citations to the MPP2 invalidity charts regarding an associated product referred to as Toast 5 ("Toast"). *Id.* at 1. Defendants contend that good cause exists for both amendments. *Id.*

Defendants state that they first charted MPP2 in a draft of their invalidity contentions they provided to Plaintiff on December 22, 2009. *Id.* at 3 (citing Declaration of Chris Holm in support of Docket Number 727 ("Holm Declaration"), ¶ 3). MPP2 was added as a primary reference on March 9, 2010, when the transferor court granted an unopposed Joint Motion for Leave to Supplement

2

1  Invalidity Contentions. *Id*. (citing Holm Declaration, ¶ 3). Defendants state that they had no access to
2  MPP2 source code prior to March 2010, and therefore did not include source code contentions at that
3  time. *Id*. (citing Holm Declaration, ¶ 3). Defendants contend that they obtained some of the MPP2
4  source code on June 24, 2010 from Heuris pursuant to a third-party subpoena. *Id*. (citing Holm
5  Declaration, ¶ 4). Defendants state that they received additional source code from Heuris on July 19,
6  2010. *Id*. (citing Holm Declaration, ¶ 4). On July 26, 2010, Defendants produced the Heuris source
7  code to Plaintiff in two discs. *Id*. (citing Holm Declaration, ¶ 4). One contained the source code in
8  native form. *Id*. (citing Holm Declaration, ¶ 4). The other identified specific examples of Heuris
9  source code relevant to the asserted claims. *Id*. (citing Holm Declaration, ¶ 4). On August 4, 2010,
10 Defendants sent Plaintiff proposed MPP2 invalidity contention charts that included the MPP2 source
11 code. *Id*. (citing Holm Declaration, ¶ 5).

12       Defendants further state that Toast is a software application sold by Adaptec/Roxio. *Id*. at 3-4
13 (citing Holm Declaration, ¶ 6). Toast and its optical disc burning functionality are described in the
14 MPP2 user manual. *Id*. at 4 (citing Holm Declaration, ¶ 6). Defendants included the description of
15 Toast contained in the MPP2 use manual in its December 22, 2009 invalidity charts. *Id*. (citing Holm
16 Declaration, ¶ 6). In mid-August 2010, Defendants discovered that portions of the Toast 5 user
17 manual further describe the process of burning DVDs and VCDs. *Id*. (citing Hold Declaration, ¶ 6).
18 Specifically, the Toast 5 user manual shows that the acceptable input files for Toast 5 are the same
19 types of files that MPP2 creates. *Id*. at 8 (citing Holm Declaration, ¶ 6). On the other hand, the MPP2
20 manual only implies, without clearly stating, that the files created by MPP2 are directly compatible
21 with Toast. *Id*. (citing Holm Declaration, ¶ 6). On August 18, 2010, Defendants produced the Toast 5
22 user manual to MedioStream. *Id*. at 4. On September 2, 2010, Defendants sent Plaintiff proposed
23 invalidity contention charts containing references to portions of the Toast 5 user manual. *Id*. (citing
24 Holm Declaration, ¶¶ 6-7).

25       As to the source code contentions, Defendants argue that there is good cause for amendment
26 for three reasons. *Id*. at 5-7. First, Defendants were diligent in adding source code contentions to
27 their invalidity charts because they had not received all of the MPP2 source code from Heuris until
28 July 19, 2010, they produced that code on July 26, 2010, and they added source code level contentions

United States District Court
Northern District of California

3

1   on August 4, 2010. *Id.* at 5. Second, Defendants' source code level contentions are important to their
2   invalidity contentions because they demonstrate process steps that are relevant under the transferor
3   court's claim construction and difficult to confirm by external observation, such as whether the video
4   is resized prior to changing its frame rate. *Id.* at 6. Third, allowing Defendants to supplement their
5   invalidity contentions will not prejudice Plaintiff because Defendants added the contentions prior to
6   the claim construction hearing, Plaintiff has ample time to address the contentions in an expert
7   rebuttal report on invalidity, and Defendants are merely supplementing previously charted contentions
8   with greater specificity. *Id.* at 6-7.

9       Defendants further argue that there is good cause to allow them to supplement their invalidity
10  contentions with respect to the Toast 5 manual for three reasons. *Id.* at 7-9. First, Toast as a prior art
11  reference is already in the case and references to the Toast 5 manual will not cause their invalidity
12  contentions to substantially depart from the invalidity contentions in the case as of March 9, 2010. *Id.*
13  at 7-8. Second, the Toast 5 manual provides details regarding the specific types of input files for
14  Toast 5 that are important to demonstrating that MPP2 with Toast creates DVD and VCD optical
15  discs. *Id.* at 8. This showing is important under the transferor court's claim construction. *Id.* Third,
16  Plaintiff will not be prejudiced because Plaintiff was aware of the Toast product by December 22,
17  2009, Plaintiff was aware of the Toast 5 user manual since August 18, 2010, and Plaintiff was aware
18  of Defendants references to the Toast 5 user manual in its MPP2 invalidity contentions since
19  September 2, 2010. *Id.* at 9.

20      ### 3.    Plaintiff's Opposition

21      Plaintiff supplements Defendants' factual assertions. Plaintiff's Opposition to Defendants'
22  Motion to Amend Invalidity Contentions ("Opposition to Docket Number 727"), 1-2. First, regarding
23  the source code, Plaintiff states that Defendants were aware of the MPP2 source code since at least
24  August 24, 2009 through their consultation with Mathew Cowan ("Cowan"), from Heuris. *Id.* at 3
25  (citing the Declaration of Zaed Billah ("Billah Declaration"), ¶¶ 4-5). Plaintiff further states that
26  Defendants worked directly with Brian Quandt ("Quandt"), purportedly the chief architect of MPP2
27  and a person with access to the MPP2 source code, for ten months beginning in December 2009
28  during which they reviewed the source code. *Id.* (citing Deposition of Brian Quandt ("Quandt

4

Deposition"), Dkt. No. 536, Ex. B, 55:18-24). As a result, Plaintiff contends that Defendants' failure to provide the source code until July 26, 2010 was the result of a tactical decision to withhold knowledge about the source code. *Id.* at 2-3. Plaintiff further states that Defendants, in their proposed invalidity contentions, argue that the order in which the video is resized and the frame rate is changed is irrelevant, thus the source code is irrelevant. *Id.* at 4 (citing Dkt. No. 463, Ex. A, 21). Plaintiff states that it was prejudiced by Defendants withholding the source code, because it was produced just after July 23, 2010, the day on which the final brief regarding claim construction was due. *Id.*

Second, Plaintiff contends that Defendants are intimately aware of the Toast's capabilities because Toast is a product sold by Sonic, one of the Defendants in this action. *Id.* at 5. Plaintiff notes that Adaptec has not sold Toast since April 12, 2001 when it spun off Roxio. *Id.* Moreover, Sonic acquired Roxio on December 19, 2004, and now sells Toast. *Id.* Because Defendants have not explained their delay in reviewing or citing the Toast 5 user manual, Plaintiff argues that there is no good cause to allow them to amend their invalidity contentions now. *Id.* Moreover, Plaintiff argues that Defendants' failure to investigate the Toast 5 manual in the first place demonstrates that it did not think the subject matter was important. *Id.* at 6. For that reason, Plaintiff contends that it is not important. *Id.* Finally, Plaintiff contends that it was put at a tactical disadvantage because Defendants produced the Toast 5 user manual on August 18, 2010, two days before the transferor court's August 20, 2010 claim construction hearing. *Id.*

### 4. Defendants' Reply

Defendants contend that the Toast 5 user manual was dated April 2001, approximately three years before Sonic acquired Roxio in 2004. Defendants' Reply in Support of Docket Number 727, 2. In addition, Defendants contend that the particular relevance of Toast only became apparent when the MPP2 source code was obtained and charted. *Id.* Defendants state that the Toast reference and the related proposed contentions were promptly produced thereafter. *Id.* Thus, Defendants argue that they were diligent. *Id.* at 1-2.

Defendants also argue that Plaintiff will not be prejudiced by the proposed amendments because Plaintiff has not shown any reason that the amended contentions would have had any impact on claim construction. *Id.* at 2-3 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005)

5

1    (declining to endorse "a regime in which validity analysis is a regular component of claim
2    construction")).

3        Finally, Defendants contend that the MPP2 source code and the Toast 5 user manual are
4    important to their case.  Defendants argue that a number of their products do not infringe the patents
5    in suit because they do not perform the claimed method steps in the claimed order.  *Id.* at 3.
6    Moreover, Defendants contend that these invalidity contentions prevent Plaintiff from relying on the
7    Doctrine of Equivalents.  *Id.*  Under the transferor court's claim construction, Plaintiff's patent
8    requires resizing of the video prior to adjusting the frame rate.  *Id.* at 3.  Defendants argue that
9    Plaintiff claims that, under the Doctrine of Equivalents, products that perform the same operations in
10   reverse infringe on the asserted patents.  *Id.*  Defendants state that the MPP2 references show that
11   MPP2 was prior art which performed the same operations in reverse, preventing Plaintiff from relying
12   on the Doctrine of Equivalents.  *Id.* at 3-4.  Thus, the amended invalidity contentions are important to
13   Defendants' case.

14       **B.    Docket Number 730**

15           **1.    Procedural History**

16       Former Defendants Nero AG and Nero, Inc. (collectively "Nero") initially moved the
17   transferor court for the amendments requested in Docket Number 730 on October 14, 2010.  Notice of
18   Motion Contained in Docket Number 730, 1 n.1 (citing Dkt. No. 465).  On December 6, 2010, while
19   Nero's initial motion was still pending, the United States Court of Appeals for the Federal Circuit
20   transferred the case to the Northern District of California.  On July 15, 2011, Nero was dismissed
21   from the case pursuant to stipulation of the parties.  *Id.* (citing Dkt. No. 676).  On September 1, 2011,
22   the District Court vacated all then-pending motions and indicated that the parties should re-file those
23   motions upon the resumption of litigation activity on July 2, 2012.  *Id.*  Defendants, although they
24   never joined Nero's motion, filed Docket Number 727 on July 5, 2012.

25           **2.    Defendants' Motion to Amend Invalidity Contentions**

26       Defendants seek to amend their invalidity contentions to add a new software build of a piece
27   of prior art. Dkt. No. 730, 1.  Currently, Defendants' invalidity contentions identify Nero Burning
28   ROM 5.5 ("Nero 5.5") as a piece of prior art.  *Id.*  Specifically, Defendants identified and charted

6

code level invalidity contentions of build 5.5.1.8 of Nero 5.5 on June 24, 2009, for Plaintiff's review. *Id.* at 4 (citing Dkt. No. 108-7 and 108-10). Defendants move to amend their invalidity contentions to add build 5.5.5.1 of Nero 5.5, a more recent version. *Id.* at 1.

Defendants contend that they charted build 5.5.1.8 of Nero 5.5 in reliance on Plaintiff's alleged conception date. *Id.* at 4. In its January 30, 2009 Disclosure of Asserted Claims and Infringement Contentions, Plaintiff asserted that it conceived its patent in November 2000 but was silent on when that patent was reduced to practice. *Id.* During discovery, Defendants propounded interrogatories seeking to pin down whether Plaintiff could establish an invention date prior to July 23, 2002, the date they obtained their patent. *Id.* According to Defendants, Plaintiff could establish an invention date prior to July 23, 2002 by showing either (1) that they had reduced their invention to practice prior to that date; or (2) that they had conceived the invention on a prior date and had subsequently diligently reduced their invention to practice. *Id.* at 4-5. In its interrogatory responses, Plaintiff stated that the invention date was at least September 11, 2000. *Id.* at 4.

On June 10, 2010, Plaintiff for the first time supplied its reduction to practice date. *Id.* at 5. That date was July 23, 2002, the patent filing date. *Id.* In mid-August 2010, Defendants deposed Plaintiff's corporate representative regarding the dates of conception of the dates of reduction to practice. *Id.* Defendants characterize the deposition as showing both (1) that Plaintiff is unlikely to be able to demonstrate a September 11, 2000 conception date; and (2) that Plaintiff is unlikely to be able to demonstrate a diligent reduction to practice after conception. *Id.* (citing Declaration of Chris Holm in Support of Docket Number 730 ("Holm Declaration Supporting 730"), ¶5, Ex. C, 21:22-39:24). Defendants contend that Plaintiff will not be able to establish an invention date prior to July 23, 2002, as opposed to September 11, 2000. *Id.* Defendants state that this means they will be able to rely on prior art dated between July 23, 2001 (which would otherwise be the bar date pursuant to 35 U.S.C. § 102(b)) and July 23, 2002 (the date of patent filing). *Id.* at 4, 7-8. Because build 5.5.5.1 of Nero 5.5 was first sold in the United States in September 2001, Defendants contend that they are now able to rely on it as prior art. *Id.* at 4. Thus, Defendants seek to amend their invalidity contentions to include references to build 5.5.5.1. *Id.*

//

7

1         Defendants contend that good cause exists where a plaintiff's choice of invention date

2 broadened the prior art search required by the defendant. *Id.* at 9 (citing *Alt v. Medtronic, Inc.*, 2006

3 WL 278868, at \*2-\*3 (E.D. Tex. Feb. 1, 2006)). In addition, Defendants argue that, if they are not

4 allowed to amend their invalidity contentions, they will be unable to reference a critical piece of prior

5 art because Plaintiff initially asserted an incorrect reduction to practice date. *Id.* at 6. Defendants

6 state that Plaintiff will contend build 5.5.1.8 of Nero 5.5 lacks an MPEG2 encoder. *Id.* at 7. Further,

7 Defendants state that build 5.5.5.1 of Nero 5.5 indisputably includes an MPEG2 encoder. *Id.*

8 Defendants argues that the lack of an MPEG2 encoder is the only way Plaintiff can attempt to

9 distinguish build 5.5.1.8 of Nero 5.5 from its asserted patents. *Id.* at 3. Thus, build 5.5.5.1 of Nero

10 5.5 would be indistinguishable from Plaintiff's asserted patents. *Id.* Defendants contend that this

11 indistinguishable prior art is potentially case-determinative. *Id.*

12         Finally, Defendants argue that amendment of their invalidity contentions to address build

13 5.5.5.1 of Nero 5.5 will not unfairly prejudice Plaintiff. *Id.* at 10-11. Defendants state that build

14 5.5.5.1 is substantially similar to build 5.5.1.8. *Id.* at 10. Defendants also note that Nero, formerly a

15 defendant in this action, originally filed a motion to amend their invalidity contentions to include

16 build 5.5.5.1 of Nero 5.5 on October 14, 2010. *Id.* By then, Nero had provided Plaintiff invalidity

17 charts with references to build 5.5.5.1. *Id.* Defendants state that on September 1, 2010, Nero first

18 provided Plaintiff with a draft of the present Motion. *Id.* At that time, the discovery deadline was

19 over six weeks away and Plaintiff had not yet deposed any of Nero's witnesses. *Id.* at 11. Based on

20 these reasons, Defendants conclude that there would be no unfair prejudice. *Id.*

21           **3.**    **Plaintiff's Opposition**

22         Plaintiff argues that Defendants' Motion is untimely for three reasons. First, Plaintiff notes

23 that Nero disclosed these amendments to its invalidity contentions on September 14, 2010, about a

24 month before discovery closed on October 15, 2010. Plaintiff's Opposition to Docket Number 730

25 ("Opposition to Docket Number 730"), 1. In addition, Plaintiff states that Nero refused to bring its

26 software engineers to the United States for depositions, preventing them from taking adequate

27 discovery. *Id.* at 2. Second, Plaintiff observes that Defendants did not join Nero's motion to amend

28 their invalidity contentions with the present claims. *Id.* at 1.

8

1    Third, Plaintiff argues that its invention date is unchanged. *Id.* at 6-8. Plaintiff does not

2  contest changing their reduction to practice date, but contends that the date is irrelevant because they

3  have always relied on their conception date, September 11, 2000, as the date of invention and

4  produced a large number of documents that they claim support their proffered invention date. *Id.* at 7.

5  Thus, Plaintiff concludes build 5.5.5.1 of Nero 5.5 is no more relevant now than it was at the outset,

6  so Defendants, who must have been aware of their co-defendant's own software, have no valid excuse

7  for delay. *Id.* at 7-8.

8    Plaintiff also argues that build 5.5.5.1 of Nero 5.5 is not important because it remains barred

9  by their September 11, 2000 invention date. *Id.* at 8. Because Plaintiff relies on its conception date,

10  not its reduction to practice date, for its invention date, Plaintiff argues that nothing has changed. *Id.*

11    Finally, Plaintiff contends that it will be prejudiced by inclusion of build 5.5.5.1 of Nero 5.5.

12  *Id.* at 9. Plaintiff notes that Nero never made its software engineers available for deposition in the

13  United states. *Id.* Plaintiff reiterates that Nero did not bring its motion until September 14, 2010 and

14  that Defendants did not adopt Nero's position until July 5, 2012, a year after Nero was dismissed from

15  the case. *Id.* Plaintiff states that discovery is now closed and Plaintiff has served its opening expert

16  reports. *Id.* Thus, Plaintiff concludes that the case is too far advanced to allow Defendants to amend

17  their invalidity contentions to include build 5.5.5.1. *Id.*

18        **4.    Defendants' Reply**

19    Defendants reply that they asserted build 5.5.5.1 as prior art on October 22, 2010, when they

20  served the Expert Report of Mark Lanning Regarding the Validity of U.S. Patent Nos. 7,009,655

21  ("'655 Patent") and 7,283,172 ("'172 Patent") and MedioStream's Use of Nero's Software ("Lanning

22  Report"). Defendants' Reply in Support of Docket Number 730, 1-2. Defendants state that the

23  Lanning Report explained in detail how build 5.5.5.1 invalidates Plaintiff's patents in this suit. *Id.* at

24  2 (citing Supplemental Holm Declaration in Further Support of Docket Number 730 ("Supplemental

25  Holm Declaration"), ¶ 4, Ex. E). In any event, Defendants argue that the fact that Nero, rather than

26  the remaining defendants, brought the earlier motion to add build 5.5.5.1 to its invalidity contentions

27  is irrelevant to the good cause analysis. *Id.*

28  //

9

1       Defendants also argue that they "re-noticed" Nero's initial motion to add build 5.5.5.1 to its

2  invalidity contentions in timely fashion. *Id.* Defendants note that the parties agreed to "stand-down"

3  while the Federal Circuit determined the appropriate venue for the case. *Id.* At that time, Nero's

4  motion was still pending. The stand-down period ran until a September 2, 2011 Case Management

5  Conference in the Northern District of California. *Id.* At that time, the court postponed all litigation

6  activity until after July 1, 2012. *Id.* Defendants filed Docket Number 730 on July 10, 2012. *Id.*

7       Further, Defendants assert that Plaintiff has been able to conduct discovery of build 5.5.5.1.

8  *Id.* at 3.  In depositions of Nero's 30(b)(6) representatives on September 17, 2010 and October 8,

9  2010, Defendants state that Plaintiff asked several questions regarding build 5.5.5.1. *Id.* (citing

10  Supplemental Holm Declaration, Ex. F at 261:20-263:22, 266:7-267:23; Ex. G at 115:17-116:11).

11  Thus, Defendants argue that Plaintiff cannot claim prejudice. *Id.* at 5.

12       Defendants characterize Plaintiff's arguments that Defendants delayed seeking amendment of

13  their invalidity contentions as relying on the proposition that Defendants should not have placed any

14  reliance on Plaintiff's asserted invention date. *Id.* at 3.  Defendants argue that this would create a

15  regime where they are forced to incur significant costs to submit a potentially over-inclusive expert

16  report. *Id.* at 3-4.

17       **C.**    **Docket Number 746**

18       In Docket Number 746, Defendants seek (1) to supplement their invalidity contentions with a

19  claim chart for Microsoft DirectX 8.0; (2) to supplement and correct their invalidity claim charts with

20  citations to the source code for the following four previously disclosed prior art products:  (a) Ulead

21  VideoStudio 5.0 DVD Edition; (b) neoDVD; (c) Windows Movie Maker 1.1; and (d) VideoFactory

22  2.0; and (3) to supplement their invalidity contentions by disclosing three additional defenses,

23  including:  (a) a best-mode defense; (b) an inventorship defense; and (c) a patentable-subject-matter

24  defense. Docket Number 746, 2-4, 11.  Defendants argued that good cause exists for each

25  amendment. *Id.* at 5-12.  In response, Plaintiff filed a statement of non-opposition. Plaintiff's

26  Statement of Non-Opposition to Docket 746, 1-2.

27  //

28  //

Northern District of California

United States District Court

10

### D.   Motion to Strike

Microsoft moves to strike portions of the Expert Report of James Foley ("Foley Report"). Motion to Strike, 1. As background, Microsoft explains that, as of October 18, 2010, Plaintiff alleged that Microsoft induced infringement of Plaintiff's '655 Patent by providing the necessary elements, eight code operations, of the asserted claims through several of Microsoft's client operating systems. *Id.* at 2-4. Microsoft argues that the Foley Report presents a new theory of infringement. *Id.* at 4, 6. This theory, according to Microsoft, is that third-party software that is "designed to integrate" with Microsoft Windows and is "loaded onto the memory of a computer running Windows XP, Windows Vista, or Windows 7" causes Microsoft to infringe on Patent '655 even though Microsoft did not write any of the eight code operations. *Id.* at 4 (quoting Foley Report, ¶ 112). Because the Foley Report introduces a new theory of liability, Microsoft argues that the portions of the Foley Report relating to that theory should be stricken. *Id.* at 6 (citing *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, 2010 WL 786606, at *2 (E.D. Tex. Feb 26, 2010); *Oracle America, Inc. v. Google, Inc.*, 2011 WL 4479305, at *1-*3 (N.D. Cal. Sept. 26, 2011)). In addition, Microsoft argues that it would be severely prejudiced if its motion is denied because it has not had an opportunity to conduct discovery regarding any of the third-party software implicated by Plaintiff's theory. *Id.* at 7-9.

Plaintiff does not contest Microsoft's claim that the Foley Report adds a new theory of indirect infringement. Nor does Plaintiff contest Microsoft's assertion that the Foley Report – unlike Plaintiff's infringement contentions – asserts that third party software "contains [the] code" required by the claims in the patent. *See, e.g.*, Foley Report, ¶ 197. Yet Plaintiff responds that the Foley Report adds no additional claims. Plaintiff's Response to Microsoft's Motion to Strike, 2. Plaintiff explains that its claim charts clearly indicate that Microsoft's Windows software is capable of performing each of elements of the claims asserted in the '655 Patent. *Id.* Plaintiff asserts that Microsoft makes these portions of its code available to third-party software publishers through Application Programmer Interfaces ("APIs"). *Id.* Plaintiff argues that, by making its infringing code available to third-parties, Microsoft is inducing infringement. *Id.* Plaintiff states that the infringing functionality is identical whether the Microsoft code is invoked by a Microsoft program or a third-party program. *Id.*

11

1  Plaintiff emphasizes that third-party software using an API is simple, meaning that Microsoft

2  will not need extensive discovery. *Id.* at 2-3. Plaintiff notes that at a September 2011 hearing,

3  Microsoft mentioned that it intended to seek discovery on the present issue, but did not object to a six

4  month expansion of the discovery window as sufficient. *Id.* at 3. Thus, Plaintiff contends that

5  Microsoft cannot now contend that the claims presented in the Foley Report will cause protracted

6  discovery. *Id.*

7  Microsoft replies that it will be required to assess whether third party applications perform

8  each of the eight code operations, whether or not they invoke Microsoft's API, to determine whether

9  those applications infringe on the '655 patent. Microsoft's Reply in Support of Motion to Strike, 2.

10  Microsoft states that this would require reopening fact discovery, which closed prior to Plaintiff filing

11  the Foley Report. *Id.* at 3. Microsoft elaborates that it would be burdensome to review the relevant

12  third party source code, which is not in its possession. *Id* at 2. In any event, Microsoft argues that

13  Plaintiff has not contradicted its assertion that Dr. Foley's opinion represented a novel theory of

14  infringement omitted from Plaintiff's infringement contentions. *Id.* at 1.

15  **E.  Microsoft's Motion for Reconsideration**

16  **1.  Proceedings in the Transferor Court**

17  In the underlying motion, the transferor court granted Plaintiff's motion to amend its

18  infringement contentions. In its analysis, the transferor court found that each of the four factors set

19  forth in *Arbitron, Inc. v. Int'l Demographics Inc.*, 2009 WL 166555, at *1 (E.D. Tex. Jan 16, 2009)

20  favored granting Plaintiff's motion. Dkt. No. 468, 2-5.[1] In framing the issue presented by the motion,

21  the transferor court stated that "Plaintiff seeks to amend its infringement contentions a[s] to Microsoft

22  to include Microsoft's Windows operating systems, including its Windows XP, Windows Vista, and

23  Windows 7 operating systems." *Id.* at 2-3. These specific examples are client operating systems.

24  Throughout the remainder of the transferor court's order, the transferor court appears to have used

25  "Microsoft's Windows operating systems," "Microsoft's operating systems," and "the operating

26  systems" interchangeably. *Id.* at 2-5. These terms could refer to both Microsoft's client and server

27

28  ---
[1] The four factors are (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) the potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Arbitron*, 2009 WL 166555 at *1.

12

1 operating systems. *See* Dkt. No. 310, 7 (referring to Windows operating system). The transferor

2 court never explicitly referred to Microsoft's server operating systems or distinguished between server

3 and client operating systems.

4      In its briefing before the transferor court, Plaintiff argued that the license for "AuthorScript"

5 software, an infringing functionality, appeared to permit use with Microsoft's server operating system.

6 *Id.* This allegedly indicated that infringing functionality could be used with server operating systems.

7 Plaintiff stated that Microsoft had delayed in producing documents relevant to whether infringing

8 functionality was used on server operating systems, and that Microsoft's delay in making that

9 information available could not be grounds for denying amendment to their infringement contentions.

10 Dkt. No. 400, 1, 5.

11      Opposing the motion, Microsoft devoted the first half of its brief to several arguments specific

12 to its server operating systems. It argued (1) that Plaintiff was aware of the licensing agreement on

13 which it based its inclusion of server operating systems by June 22, 2009; (2) that the permissive

14 licensing agreement was not evidence that Microsoft distributed its allegedly infringing products on

15 its server operating systems; (3) that Plaintiff did not attempt to include server operating systems until

16 May 7, 2010; (4) that Plaintiff's infringement charts contained no reference to server software; (5) that

17 inclusion of server software would greatly increase the scope of discovery; and (6) that continuance

18 would not cure the prejudice. Dkt. No. 310, 2-8. In the remainder of its brief, Microsoft argued that

19 Plaintiff's other proposed amendments, impacting its client operating systems, should be denied

20 because (1) it was aware of sufficient information to advance the new theories as of July 2009; (2)

21 Plaintiff agreed to remove those contentions to obtain Microsoft's consent to previous amended

22 infringement contentions; (3) that the proposed amendments were not important to Plaintiff's case; (4)

23 that the amendments would quadruple the scope of discovery; and (5) that a continuance would not

24 cure the prejudice. *Id.* at 9-15.

25      The transferor court identified Microsoft's arguments that (1) Plaintiff was not diligent in

26 amending its contentions; (2) that an amendment would be untimely and prejudicial; and (3) that

27 Plaintiff agreed to drop certain of its infringement contentions to obtain Microsoft's agreement in

28 amending other infringement contentions. Dkt. No. 468, 3. The transferor court also noted that

United States District Court
Northern District of California

13

1  Microsoft argued that the availability of a continuance would have no effect on its ability to defend
2  itself. *Id.* at 5.

3  The transferor court held that (1) Plaintiff had reasonably explained its failure to meet its
4  January 30, 2009 deadline to set its infringement contentions because Defendants had not produced
5  the necessary documents until July 2009 and Plaintiff began seeking amendment in September 2009;
6  (2) "[a]ccording to Mediostream, Microsoft has integrated much of the functionality covered by the
7  asserted claims into its operating systems. As a result, many of the products initially accused by
8  Plaintiff are now little more than a user interface calling functions included in Microsoft's operating
9  systems. If this is the case, excluding Microsoft's Windows operating systems from the case may
10 essentially prevent Mediostream from asserting its patents;" (3) that any potential prejudice was the
11 result of Microsoft's own slow production, as Plaintiff had indicated its intent to include "Windows
12 operating systems" no later than February of 2010; and (4) that the availability of a continuance
13 weighed in favor of allowing the amendments because Microsoft did not seek a continuance and
14 argued that a continuance would not affect its ability to defend itself. *Id.* at 3-5.

### 2. Contentions of the Parties

16 Microsoft moves for leave to file a motion for reconsideration regarding the decision of the
17 transferor court to permit Plaintiff to amend its infringement contentions to add Microsoft's "Server
18 operating systems." Microsoft's Motion for Reconsideration, 1-2. Microsoft states that on June 5,
19 2010, Plaintiff filed a motion to amend its infringement contentions adding new allegations against
20 Microsoft's server operating systems. *Id.* at 3. Prior to that amendment, Plaintiff had accused
21 Microsoft's Movie Maker and DVD Maker, among other software integrated with Microsoft's client
22 operating system, of infringement. *Id.* at 2. Microsoft explains that client operating systems, such as
23 Windows Vista and Windows 7, are operating systems that run on personal computers and help users
24 perform everyday tasks. *Id.* Microsoft states that server operating systems differ in that they are
25 designed to handle massive data and operations management functions and can span thousands of
26 individual computers, many of which lack screens, optical drives, and keyboards. *Id.* at 3.

27 Microsoft opposed Plaintiff's motion, arguing that Plaintiff had not shown good cause for
28 amendment. *Id.* at 4. Microsoft "responded to [Plaintiff's] one-sentence argument for including the

14

new contentions against server operating systems by explaining that the mere recital of a general license permitting the use of 'AuthorScript' software 'in connection with any Microsoft Products' that appeared in the document MedioStream had cited … was not a sufficient basis from which to conclude that Movie Maker and DVD Maker are actually used in Microsoft's server operating systems." *Id.* In addition, Microsoft highlighted Plaintiff's failure to produce claim charts on server operating systems, failure to identify a server operating system that it wanted to accuse, and failure to explain how the allegations against server operating systems satisfied the four-factor test for good cause to untimely amend infringement contentions. *Id.* at 5 (citing *Arbitron*, 2009 WL 166555 at *1).

Microsoft states that, in granting Plaintiff's motion, the court addressed only the parties' arguments regarding Microsoft's client operating systems, including Windows XP, Windows Vista, and Windows 7. *Id.* (citing Order Granting Plaintiff's Motion to Amend Invalidity Contentions (Docket Number 468), 2-3). Microsoft further states that the Order did not address arguments relating to Microsoft's server operating systems. Microsoft argues that it should be granted leave to file a motion for reconsideration because this demonstrates a "manifest failure to consider any of Microsoft's arguments and failure to apply the four-factor test of *Arbitron*." *Id.* at 7; *see also* Civil L.R. 7-9(b)(3).

Plaintiff argues that Microsoft is attempting to revisit a settled issue in contravention of the local rules. Plaintiff's Opposition to Microsoft's Motion for Leave to File Motion for Reconsideration ("Opposition to Motion for Reconsideration"), 1-2. Plaintiff states that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the moving party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." *Id.* at 2 (citing Civil L.R. 7-9(c)). Moreover, Plaintiff contends that Microsoft cannot definitely determine that the transferor court failed to consider the arguments in its brief. *Id.* at 2-3. Finally, Plaintiff asserts, based on timing, that Microsoft deliberately avoided filing this Motion before the transferor court in hopes of obtaining a favorable ruling. *Id.* at 3.

In Reply, Microsoft argues that Plaintiff's reading of the local rules will make it impossible to receive relief under Civil Local Rule 7-9(b)(3). Microsoft's Reply in Support of Microsoft's Motion for Leave to File Motion for Reconsideration ("Reply in Support of Motion for Reconsideration"), 1.

15

1   Microsoft elaborates that it has summarized its former arguments to demonstrate that they were not

2   considered in the order. *Id.* at 1-2. In addition, Microsoft asserts that it did not avoid filing this

3   Motion before the transferor court, but simply failed to do so in the three weeks between the

4   transferor court's relevant order and the stay put in place by the Federal Circuit. *Id.* at 2. Finally,

5   Microsoft argues that the transferor court's failure to consider its dispositive arguments is clear

6   because, in its order, the transferor court addressed the parties' positions and the basis for its decision

7   on ten separate motions but neglected only to mention the issues presented by Plaintiff's attempt to

8   add Microsoft's server operating systems. *Id.*

9   **F.    Acer's Motion for Reconsideration and Asus's Motion for Reconsideration**

10  Like Microsoft, Acer, Asus, and Gateway seek leave to file a motion for reconsideration

11  contesting the transferor court's order granting Plaintiff's motion to amend its infringement

12  contentions to include Microsoft's server operating systems. Acer's Motion for Reconsideration, 1;

13  Asus's Motion for Reconsideration, 2. The transferor court granted amendments to Plaintiff's

14  infringement contentions against Acer, Asus, and Gateway that corresponded to those made against

15  Microsoft. Acer's Motion for Reconsideration, 1; Asus's Motion for Reconsideration, 2. Acer, Asus,

16  and Gateway adopt the reasoning set forth in Microsoft's Motion for Reconsideration. Acer's Motion

17  for Reconsideration, 2; Asus's Motion for Reconsideration, 2-3. As discussed above, Plaintiff filed an

18  Opposition to Microsoft's Motion for Reconsideration.

19  **III.   ANALYSIS**

20  **A.     Motions for Leave to Amend Invalidity Contentions**

21  **1.    Legal Standard**

22  The Northern District of California's Patent Local Rules apply to this action. Patent L.R. 1-2

23  ("[t]hese rules apply to all civil actions filed in or transferred to this Court which allege infringement

24  of a utility patent..."). A party claiming patent infringement must serve a "Disclosure of Asserted

25  Claims and Infringement Contentions" separately on each opposing party within fourteen days of the

26  initial Case Management Conference. Patent L.R. 3-1. Each party opposing a claim of patent

27  infringement is required to serve invalidity contentions not later than 45 days after such. Patent L.R.

28  3-3.

United States District Court
Northern District of California

16

1    Patent Local Rule 3-6 allows the parties to amend infringement and invalidity contentions

2  "only by order of the Court upon a timely showing of good cause." Patent L.R. 3-6.

3  "[C]ircumstances that may, absent undue prejudice to the non-moving party, support a finding of

4  good cause include ... [r]ecent discovery of material, prior art despite earlier diligent search." *Id.*

5  "The local patent rules in the Northern District of California ... requir[e] both the plaintiff and the

6  defendant in patent cases to provide early notice of their infringement and invalidity contentions, and

7  to proceed with diligence in amending those contentions when new information comes to light in the

8  course of discovery. The rules thus seek to balance the right to develop new information in discovery

9  with the need for certainty as to legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,

10  467 F.3d 1355, 1365-1366 (Fed. Cir. 2006).

11    Thus, for the purposes of Rule 3-6, "'good cause' requires a showing of diligence." *Id.* at

12  1366. "The burden is on the movant to establish diligence." *Id.* If the moving was diligent in

13  amending its contentions, the Court must then consider whether the non-moving party would suffer

14  prejudice if the motion to amend were granted. Several courts in this district have held, following the

15  Federal Circuit's interpretation of the local rules, that a showing of diligence on the part of the

16  moving party is necessary to reach the issue of prejudice. *See O2 Micro Int'l*, 467 F.3d at 1368;

17  *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 508 (N.D. Cal. 2011), *aff'd* 475 F.Appx.

18  334 (Fed. Cir. 2012), *cert. denied* __ U.S. __, 2013 WL 57192 (Jan 7, 2013); *Apple, Inc. v. Samsung*

19  *Elecs. Co., Ltd.*, 2012 WL 1067548, at *2-*3 (N.D. Cal. Mar. 27, 2012); *but see Sunpower Corp. Sys.*

20  *v. Sunlink Corp*, 2009 WL 1657987, at *1-*2 (N.D. Cal. June 12, 2009) (noting decisions in this

21  district that "have not taken as clear cut a stance" and declining to determine whether a showing of

22  diligence is necessary to reach the issue of prejudice). Courts have also considered factors including

23  the relevance of the newly discovered prior art, whether the request to amend is motivated by

24  gamesmanship, the difficulty of locating the prior art, and whether the opposing party will be

25  prejudiced by amendment. *See Kilopass Tech. Inc. v. Sidense Corp.*, 2011 WL 5212259, at *1 (N.D.

26  Cal. Nov. 2, 2011); *Sunpower*, 2009 WL 1657987 at *1.

27  //

28  //

17

*United States District Court*
*Northern District of California*

**2.     Application to Docket Number 727**

Defendants have demonstrated good cause for amending their invalidity contentions to include MPP2 code level contentions. Defendants have not demonstrated good cause for inclusion of the Toast 5 user manual references. Docket Number 727 is granted in part and denied in part.

**a.     MPP2 Code Level Contentions**

Defendants acted with acceptable diligence in amending their contentions. Moreover, granting the amendments will not significantly prejudice Plaintiff. Defendants have demonstrated good cause to amend.

According to Plaintiff, Sony was aware of the MPP2 product by August 24, 2009, when it retained Cowan from Heuris as a consultant. Cowan put Sony in touch with Quandt, MPP2's architect. Quandt confirmed that he had source code. In mid-September, Sony passed responsibility for MPP2 to Apple. Apple's counsel began working with Quandt at some point in December 2009. Defendants included MPP2 in their December 22, 2009 invalidity charts. The MPP2 reference is a part of this case. Apple's counsel worked with Quandt for the next ten months. At some point between December 2009 and October 2010, Apple's counsel reviewed the source code with Quandt. Quandt Deposition, Dkt. No. 536, Ex. B, 55:18-24. At oral argument, Apple's counsel stated that Quandt provided only snippets of the code prior to the issuance of the subpoena. Plaintiff became aware that Defendants intended to obtain the MPP2 source code in May 2010, when Defendants issued a subpoena. Defendants obtained the code in two installments, the first on June 23, 2010 and the second on July 19, 2010. Defendants explain that obtaining the source code was difficult in spite of their relationship with Quandt because both Quandt and Heuris are third parties. Defendants produced the source code to Plaintiff on July 26, 2010. Defendants provided a copy of their amended invalidity contentions with references to the MPP2 source code on August 4, 2010. Defendants filed their initial motion to add these amendments on October 12, 2010.

First, although it is a close question, Defendants have established diligence because they moved sufficiently quickly in identifying the import of the source code, subpoenaing that code, and providing it to Plaintiff upon receipt of the entirety of the code. That source code needed to be obtained from a third party. Second, any potential prejudice to Plaintiff is mitigated by the fact that

18

1 | Plaintiff was aware of the MPP2 software and invalidity contentions in 2009. Plaintiff had the
2 | opportunity to subpoena the source code itself should it have found it necessary. In addition,
3 | Plaintiff's concerns that gamesmanship motivated Defendants to wait until July 26, 2010 to provide
4 | Plaintiff with the source code are contradicted by the short time window between Defendants' receipt
5 | of the second half of the source code and its production. Defendants were acceptably diligent, any
6 | prejudice to Plaintiff would be minimal, and the code level citations are important to determining the
7 | order of steps in the MPP2 prior art, an issue that may prove relevant. Accordingly, Docket Number
8 | 727 is granted in part.

### b.   Citations to the Toast 5 User Manual

Defendants have not demonstrated that they were diligent in seeking to amend their invalidity contentions to include references to the Toast 5 user manual. For that reason, Docket Number 727 is denied in part.

The citations at issue come from the April 2001 Toast 5 user manual. Defendant Sonic acquired the Toast product line in late 2004. The Toast product, as described in the MPP2 user manual, was included in Defendants' December 22, 2009 invalidity contentions. Defendants produced the Toast 5 user manual on August 18, 2010, two days before the claim construction hearing. Defendants provided amended invalidity charts on September 2, 2012.

Defendants attempt to excuse this delay by arguing that the relevance of the Toast 5 user manual was not apparent until the MPP2 was obtained and charted in early August 2010. Moreover, Defendants argue that they cannot be expected to be aware of the contents of all prior user manuals for products they acquire. But Defendants concede that they were aware of Toast and its general capabilities by, at the latest, December 22, 2009 when they reviewed the MPP2 manual. Holm Declaration, ¶ 6. Defendants do not claim any difficulty obtaining a copy of the user manual of one of Sonic's own products, but state that they delayed until mid-August of the following year to review the manual. *Id.* This is not diligence. Moreover, Defendants' decision to withhold the Toast 5 user manual until the eve of the claim construction hearing smacks of gamesmanship.

27 | //
28 | //

19

*United States District Court*
*Northern District of California*

1

### 3.    Application to Docket Number 730

2          Defendants were not diligent in seeking to include build 5.5.5.1 of Nero 5.5 in their invalidity

3   contentions.  Therefore, Court finds that Defendants have not shown good cause to amend their

4   invalidity contentions to include references to build 5.5.5.1 of Nero 5.5.

5          On January 30, 2009, Plaintiff asserted that its earliest conception date was November 2000.

6   At that time, Plaintiff was silent on its reduction to practice date.  On two other occasions in 2009,

7   Plaintiff reiterated the same assertion.

8          On February 11, 2010, after conducting further discovery, Plaintiff responded to an

9   interrogatory by stating its belief that it would be entitled to an invention date of September 11, 2000

10   based on documents showing conception, diligence, and reduction to practice.  Plaintiff still remained

11   silent as to the reduction to practice date.  On June 10, 2010, Plaintiff amended its interrogatory

12   response to include a reduction to practice date of July 23, 2002, the date of patent application.  This

13   was the first time Plaintiff identified any reduction to practice date.  Plaintiff continued to maintain

14   conception and invention dates of September 11, 2000 because Plaintiff contends it will be able to

15   show that it diligently reduced its inventions to practice following their conception based on

16   documents identified in its interrogatory responses.

17          From August 16, 2012 to August 18, 2012, Defendants deposed Plaintiff's corporate

18   representative.  During the deposition, Defendants sought information regarding both the conception

19   date and additional documentation of the reduction to practice.  The deposition testimony showed that

20   the inventor began working for Plaintiff at approximately the conception date, and that the witness

21   could not identify additional information relating to reduction to practice.  From this, Defendants

22   concluded that Plaintiff would be unable to establish September 11, 2000 as the invention date.

23          The governing statute provides in relevant part: "A person shall be entitled to a patent unless--

24   (a) the invention was known or used by others in this country, or patented or described in a printed

25   publication in a foreign country, before the invention thereof by the applicant for patent, or (b) the

26   invention was … in public use or on sale in this country more than one year prior to the date of the

27   application for patent in the United States…" 35 U.S.C. § 102(a)-(b).  Defendants allege that they

28   relied on Plaintiff's alleged date of conception, September 11, 2000, as the date of invention to

United States District Court

Northern District of California

establish the cut-off date for relevant prior art. When Defendants concluded that Plaintiff could not establish September 11, 2000 as the invention date, they also concluded that prior art dated between September 11, 2000 and July 23, 2002 would now be relevant to invalidate the asserted patent. Under this theory, build 5.5.5.1 may be relevant prior art because it was first sold some time in September 2001.

On September 1, 2010, Nero provided Plaintiff a draft of its motion to amend its invalidity contentions to include build 5.5.5.1 and sought to meet and confer. On September 14, 2010, Nero provided the build 5.5.5.1 invalidity charts to Plaintiff. The parties ultimately met and conferred regarding the motion on October 11, 2010. Nero filed its initial motion on October 14, 2010. The motion was pending when the action was transferred and the parties ceased litigation activity. Nero was dismissed during that period. Defendants filed their motion, seeking the same amendments sought by Nero, shortly after litigation resumed.

The parties dispute whether Nero, and Defendants, acted diligently by withholding a prior art reference, of which they had knowledge and to which they had access, because it would be barred if Plaintiff could establish its alleged date of invention. Plaintiff argues that Defendants, knowing that they may object to the alleged invention date, should not be able to sit on their objection and potentially relevant prior art. Defendants argue that such a rule will place an undue burden on defendants in these cases. Defendants also argue that this will allow plaintiffs in these cases to decide whether to stand firmly by their alleged invention date after previewing the compiled prior art. Neither party cites controlling authority.

The only pertinent case cited by either party is *Alt*, 2006 WL 278868 at *2-*4. That case involves the opposite situation. There, the plaintiff did not reveal that it was relying on an earlier conception date until after the defendant had completed its prior art search and submitted its invalidity contentions pursuant to the relevant deadlines. The earlier date moved the conception date four years ahead, meaning that defendant had to substantially broaden its search, because some more recent art could be barred. In the present case, the Plaintiff has asserted an earlier invention date from the beginning and Defendants were always aware that there was a possibility Plaintiff would be unable to prove that date.

21

1       The Court concludes that Defendants did not act diligently when they failed to disclose a

2  potentially relevant build of former Defendant Nero's product. Defendants correctly note that the

3  invention date is presumed to be the filing date until an earlier date is proved. *See Volterra*

4  *Semiconductor Corp. v. Primarion, Inc.*, 796 F.Supp.2d 1025, 1061 (N.D. Cal. 2011) (citing *Bausch*

5  *& Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986)). Defendants

6  cannot sit on a prior art reference on the assumption that Plaintiff will sustain its burden in this regard,

7  and expect to be allowed to use the reference when Defendants get the better of the dispute over the

8  invention date. Moreover, Defendants were aware that Plaintiff had at first not even asserted a

9  reduction to practice date – and later asserted the patent filing date as the reduction to practice date.

10  Nonetheless, Defendants made the decision to rely on only build 5.5.1.8 as prior art. Now, after

11  Plaintiff stated that build 5.5.1.8 lacks only an MPEG2 encoder, Defendants seek to include a more

12  recent build that has such an encoder. This is the sort of gamesmanship, previewing the opposing

13  party's position before deciding to press a position or reveal a piece of prior art, that the local rules

14  were designed to prevent. Because Defendants were not diligent, they have not demonstrated good

15  cause. Docket Number 730 is denied.

### 4.    Docket Number 746

The Court grants Defendants' unopposed Motion contained in Docket Number 746.

### B.    Motion to Strike

#### 1.    Legal Standard

20       In the Northern District of California, Patent Local Rule 3-1(c) requires a party claiming

21  patent infringement to include in its infringement contentions "[a] chart identifying specifically where

22  each limitation of each asserted claim is found within each Accused instrumentality." *Oracle*, 2011

23  WL 4479305, at *3 (quoting Patent L.R. 3-1(c)). In addition, "[f]or each claim which is alleged to

24  have been indirectly infringed" the infringement contentions shall contain "an identification of any

25  direct infringement and a description of the acts of the alleged indirect infringer that contribute to or

26  are inducing that direct infringement." Patent L.R. 3-1(d); *Fujitsu Ltd. v. Belkin Intern., Inc.*, 2012

27  WL 4497966, at *9 (N.D. Cal. Sept. 28, 2012) (infringement contentions must identify the alleged

28  third-party direct infringers to allege indirect infringement) (citing *Bender v. Maxim Integrated*

United States District Court

Northern District of California

1  *Prods., Inc.*, 2010 WL 1131595, at *3 (N.D. Cal. Mar. 22, 2010)). The theories contained in an expert
2  report can only be directed at theories properly included in a party's infringement contentions.
3  *Oracle*, 2011 WL 4479305, at *3.

4  The Eastern District of Texas has also adopted Patent Local Rules. Those rules "exist to
5  further the goal of full, timely discovery and provide all parties with adequate notice of and
6  information with which to litigate their cases." *Fenner*, 2010 WL 786606, at *2 (quoting *Computer
7  Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007)). The Patent Local
8  Rules in the Eastern District of Texas include Patent Local Rule 3-1(c). The wording of the Eastern
9  District of Texas Patent Local Rule matches its counterpart in the Northern District of California.
10 E.D. Tex. Patent L.R. 3-1(c). The Eastern District of Texas local rules do not include an analog to
11 Patent Local Rule 3-1(d). Courts in the Eastern District of Texas look to whether the infringement
12 contentions "provide a defendant with notice of a plaintiff's infringement theories." *Id.* (citing *Linex
13 Techs., Inc. v. Belkin Int'l, Inc.*, 628 F.Supp.2d 703, 706 (E.D. Tex. 2008)); *Computer Acceleration
14 Corp.*, 503 F.Supp.2d at 823. Expert infringement reports may not introduce theories not set forth in
15 infringement contentions. *Fenner*, 2010 WL 786606, at *2. Even so, infringement contentions need
16 not disclose "specific evidence nor do they require a plaintiff to prove its infringement case," whereas
17 expert reports must include a complete statement of the experts opinions, the basis and reasons for
18 them, and any data or other information considered when forming them. *Id.* (quoting *EON Corp. IP
19 Holdings, LLC v. Sensus USA Inc.*, 2010 WL 346218, *2 (E.D. Tex. Jan. 21, 2010)).

20          **2.     Application of Law to Facts**

21          Microsoft's Motion to Strike is granted in part and denied in part.

22          In its most recent infringement contentions, Plaintiff included claims against Microsoft Movie
23 Maker, Microsoft DVD Maker, Microsoft Windows XP, Microsoft Windows Vista, and Microsoft
24 Windows 7. Dkt. No. 543, Ex. 1-A. In particular, Plaintiff claimed that "Microsoft induces
25 infringement of the '655 Patent by providing the necessary elements of the asserted claims in"
26 Windows XP, Windows Vista, and Windows 7. *Id.* at Exs. 1-C at 1, 1-D at 1, and 1-E at 1. As shown
27 by these contentions, Plaintiff asserted that the Microsoft products contained all of the code required
28 by the '655 patent. *Id.* at Exs. 1-C at 5-24, 1-D at 5-28. 1-E at 5-28. Plaintiff provided no additional

23

1    theory of indirect infringement. In support of its theory, Plaintiff stated, in part, that AuthorScript is

2    integrated into each operating system. *Id.* Plaintiff elaborated that "[t]he AuthorScript API ... is a

3    collection of C++ libraries that handle all of the low-level (below the user interface) processes for

4    converting video, audio, graphics, and interactivity into a DVD-Video disc. These libraries are

5    available to third-party developers who would like to integrate DVD-Video publishing into their

6    video-centric and audio-centric applications." *Id.* at Exs. 1-C at 3, 1-D at 3, and 1-E at 3. "Since

7    AuthorScript is available as a set of C++ libraries, it can be complied into virtually any application

8    with minimal effort." *Id.* Plaintiff also stated that AuthorScript is a "comprehensive solution" that

9    performs all stages of DVD production. *Id.* at Exs. 1-C at 4-5, 1-D at 4-5, and 1-E at 4-5. Plaintiff

10   also identified Windows Media Foundation, DirectX, and DirectShow as applications integrated by

11   each operating system, in addition to AuthorScript, to convert video information from an incoming to

12   an outgoing format. *Id.* at Exs. 1-C at 2, 1-D at 1, and 1-E at 1. Plaintiff did not identify any APIs or

13   Software Development Kits ("SDK") related to Windows Media Foundation, DirectX, or DirectShow.

14   The infringement contentions proceeded to outline how Microsoft's operating systems performed

15   each of the necessary code operations. *Id.* at Exs. 1-C at 5-24, 1-D at 5-28. 1-E at 5-28.

16       The Foley Report goes beyond the infringement contentions in two ways. First, the Foley

17   Report advances the theory that "infringement of the '655 patent occurs when software designed [by a

18   third party] to integrate with Direct X, Direct Show, DES, Media Foundation, AuthorScript ... and/or

19   other integrated components to form an integrated computer software application that meets the

20   elements of the '655 patent are loaded onto the memory of a computer system running Windows XP,

21   Windows Vista, or Windows 7." Foley Report, ¶ 112. On this theory, for the first time, Plaintiff

22   contends that Microsoft violates its patent even where one or more of the eight infringing code

23   operations is supplied by third-party software. *See, e.g., id.* at ¶ 197 ("software produced by Nero,

24   Cyberlink, and Sony among others, using Microsoft's APIs and /or SDKs for Direct X, Direct Show,

25   DES, Media Foundation and other components of the accused operating systems also contain code

26   directed to" performing one of the infringing code operations). Second, the Foley Report identifies,

27   for the first time, specific third party software developers that allegedly used Microsoft's APIs and

28   SDKs to create programs that, when loaded onto a computer with Windows XP, Windows Vista, or

United States District Court
Northern District of California

24

1    Windows 7, form an integrated computer software application that infringes on the '655 patent. *Id.* at
2    ¶¶ 31 ("Microsoft induced infringement of the '655 patent ... by providing software developers, such
3    as Nero, Cyberlink and Sony, Microsoft's [SDKs] and/or APIs to use the integrated components in an
4    infringing manner, thereby inducing actual infringements when software developed with Microsoft's
5    SDK and/or API is loaded onto the memory of a computer system with Windows XP as intended, to
6    form an integrated computer software application"); 32-33 (addressing Windows Vista and Windows
7    7). The exhibits attached to the Foley Report contain examples of such third party programs. *Id.* at
8    Exs. 4-8.

9        Applying the Eastern District of Texas standard, the infringement contentions did not put
10   Microsoft on notice of the novel theory contained in the Foley Report. *See Computer Acceleration*,
11   503 F.Supp.2d at 823 (applying notice standard, finding that infringement contentions against
12   Windows XP did not put Microsoft on notice of the basis for infringement contentions against
13   Windows Vista where the two operating systems relied on different underlying technology to perform
14   the relevant operations).[2] The theory put forth in the infringement contentions is that Microsoft
15   induces infringement because it supplies each necessary code operation in its operating systems. The
16   novel theory put forth in the Foley Report is that Microsoft induces infringement even when some of
17   the code operations are performed by third-party software. The Foley Report cites examples of
18   purportedly infringing software. The infringement contentions did not alert Microsoft that Plaintiff
19   was claiming infringement by Microsoft based on these third-party programs, or that it could be liable
20   even when it did not supply all eight of the necessary code operations. Plaintiff supplied no evidence
21   or reasonable explanation in support of its failure to amend their infringement contentions prior to the
22   disclosure of its expert report. This untimely disclosure deprived Microsoft of an opportunity to
23   conduct discovery pertaining to the novel theories.

24       Based on the above, paragraphs 112, 115, 125, 128, 130, 136, 143, 151, 164, 172, 175, 179,
25   181, 185, 187, 189, 191, 193, 195, 197, and 199 are stricken in their entirety. Paragraphs 31-33 and
26
27
28   ---
     [2] The Court applies the Eastern District of Texas standard. This standard is appropriate because the underlying
     infringement contentions and expert report were filed in the Eastern District of Texas pursuant to that jurisdiction's local
     rules. Regardless, the Court would reach the same result under the Northern District of California Local Rules.

United States District Court
Northern District of California

1   113 are stricken to the extent they put forward the novel theory, discussed above.[3] The portions of

2   Exhibits 4-8 that support the novel theory, discussed above, are stricken.

3           **C.**    **Microsoft's Motion for Reconsideration**

4                  **1.**    **Legal Standard**

5                         **a.**    **In General**

6         A party may only file a motion for reconsideration of an interlocutory order after obtaining

7   leave of the Court. Civil Local Rule 7-9(a). Civil L.R. 7-9(b) sets forth several showings that a party

8   may make to support a motion for leave to file a motion for reconsideration, including: "A manifest

9   failure by the Court to consider material facts or dispositive legal arguments which were presented to

10  the Court before such interlocutory order." Civil L.R. 7-9(b)(3). "No motion for leave to file a

11  motion for reconsideration may repeat any oral or written argument made by the applying party in

12  support of or in opposition to the interlocutory order which the party now seeks to have reconsidered."

13  Civil L.R. 7-9(c). Violation of Civil Local Rule 7-9(c) may subject a party to sanctions.

14                        **b.**    **Applicable Substantive Law**

15        In ruling on the underlying motion, the transferor court applied the local rules and law

16  applicable in the Eastern District of Texas. There, "Local Patent Rule 3-6(b) allows a party to

17  supplement its infringement contentions only by order of the Court, which shall be entered only upon

18  a showing of good cause." *Arbitron*, 2009 WL 166555 at *1 (internal quotations omitted). The court

19  has broad discretion to grant untimely motions to amend pleadings. *Id.* (citing *S&W Enters., L.L.C. v.*

20  *South Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). In ruling on such motions, the

21  court should consider: "(1) the explanation for the failure to meet the deadline; (2) the importance of

22  the thing that is excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4)

23

---

24  [3] Paragraph 31 is amended to read only: "It is my conclusion and opinion that Microsoft induced infringement of the '655 patent by integrating into its Windows XP operating system code for performing the elements of the asserted claims of the '655 patent with knowledge of MedioStream's asserted rights to the inventions." Paragraph 32 is amended to read only:

25  "It is my conclusion and opinion that Microsoft induced infringement of the '655 patent by integrating into its Windows Vista operating system code for performing the elements of the asserted claims of the '655 patent with knowledge of

26  MedioStream's asserted rights to the inventions." Paragraph 33 is amended to read only: "It is my conclusion and opinion that Microsoft induced infringement of the '655 patent by integrating into its Windows 7 operating system code for

27  performing the elements of the asserted claims of the '655 patent with knowledge of MedioStream's asserted rights to the inventions." Paragraph 113 is amended to read only: "Microsoft induces infringement by integrating Direct X, Direct

28  Show, DES, Media Foundation, AuthorScript and other related components needed to satisfy the elements of the asserted claims into the accused operating systems."

United States District Court
Northern District of California

1  the availability of a continuance to cure such prejudice." *Id.*; *see also Mondis Tech., Ltd. v. LG*

2  *Elecs., Inc.*, 2011 WL 2149925, at *1 (E.D. Tex. May 5, 2011).

3                    **2.    Application of Law to Facts**

4           Microsoft argues that the transferor court manifestly failed to consider the material factual

5  distinctions between its server and client operating systems in applying the four-factor *Arbitron* test.

6  The Court concludes that the transferor court's order does not evince a manifest failure to consider

7  material facts or dispositive legal arguments.

8           The transferor court recited the four *Arbitron* factors as follows: "(1) the explanation for the

9  party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the

10 potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a

11 continuance to cure such prejudice." Dkt. No. 468, 2. As to the first *Arbitron* factor, the transferor

12 court relied on Microsoft's failure to produce the necessary documents giving rise to Plaintiff's

13 amendments until July 2009 or August 2009, long after the January 30, 2009 deadline for

14 infringement contentions. The transferor court did not mention Microsoft's argument that the license

15 agreement giving rise to Plaintiff's contentions implicating the server operating systems was in

16 Plaintiff's possession on June 22, 2009. However, the transferor court may have found that the

17 distinction in dates between June 22, 2009 and July 2009 was immaterial, given that both dates came

18 long after January 30, 2009.

19          The transferor court also noted that, based on its reading of the briefing, the parties engaged in

20 substantive discussions regarding the proposed amendments running from September 2009 until the

21 underlying motion was filed in June 2010. The transferor court did not specifically mention

22 Microsoft's factual contention that Plaintiff first notified it of the proposed inclusion of server

23 operating systems and the proposed amendments to client operating systems on May 7, 2010.

24 However, given the transferor court's reference to the briefing relating to the parties' discussions, it

25 does not appear that the transferor court failed to consider Microsoft's portrayal of the facts. Rather,

26 it appears that the transferor court exercised its broad discretion in finding that the facts, as it

27 construed them, demonstrated that Plaintiff acted diligently.

28

United States District Court
Northern District of California

27

United States District Court
Northern District of California

1    Regarding the second factor, the importance of what the court is excluding, the transferor

2    court relied on Plaintiff's assertion that "Microsoft has integrated much of the functionality covered

3    by the asserted claims into its operating systems." Dkt. No. 438, 4. The transferor court elaborated

4    that, according to Plaintiff, "many products initially accused by Plaintiff are now little more than user

5    interface calling functions included in Microsoft's operating systems." *Id.* Therefore, the transferor

6    court concluded that the proposed amendments were important and potentially dispositive. From the

7    briefing, it appears that Plaintiff's assertions were based on AuthorScript software. Microsoft argued

8    that AuthorScript was explicitly licensed for several client operating systems but not for any server

9    operating systems, while conceding that there was permissive language in the license. Dkt. No. 386,

10   6. Although the transferor court did not address this attempted distinction, the language of its order

11   applies to all Microsoft operating systems. This does not mean that the transferor court failed to

12   consider Microsoft's arguments. Indeed, the transferor court would have had to miss the entire first

13   half of Microsoft's brief. Rather, the transferor court may just as well have credited Plaintiff's

14   argument that the server operating systems should be added to the case because "Microsoft ... appears

15   to have licensed AuthorScript for all of Microsoft's operating systems." Dkt. No. 310, 7.

16   Applying the third factor, the potential prejudice if the court allows the thing that would be

17   excluded, the transferor court rejected Microsoft's argument that allowing amendment would be

18   extremely prejudicial because Microsoft was aware of Plaintiff's intent to include its Windows

19   operating systems by at least February 2010, Microsoft has already produced source code for several

20   of its operating systems, the proposed amendments were the reasonably foreseeable result of

21   Microsoft's disclosure, and any prejudice suffered by Microsoft was the result of its slow production.

22   Dkt. No. 468, 4-5. The transferor court did not distinguish between Microsoft's arguments regarding

23   its server and client operating systems. Both arguments were to the effect, as described by the

24   transferor court, that allowing amendment would be "extremely prejudicial." Although some of the

25   transferor court's bases appear directed at arguments relating to client operating systems, Plaintiff

26   argued that Microsoft delayed in producing critical documents relating to its server operating systems.

27   This record is insufficient to show that the transferor court failed to consider Microsoft's argument

28   regarding prejudice.

United States District Court
Northern District of California

1    Turning to the fourth factor, the transferor court relied only on Microsoft's argument that a

2  continuance would not affect its ability to defend itself. Dkt. No. 468, 5. Microsoft put forward the

3  same argument regarding both its server and client operating systems. There is no basis for

4  concluding that the transferor court failed to consider a material fact as it pertains to this factor.

5    The Court is not persuaded that the transferor court's decision not to distinguish between

6  server operating systems and client operating systems was the result of a manifest failure to consider

7  the differences between the two systems. To agree with Microsoft the Court would have to conclude

8  that the transferor court ignored nearly half of Microsoft's brief. Instead, as described above, the

9  transferor court considered those differences, as put forth at length in Microsoft's brief, but

10  determined that the differences were immaterial in light of the numerous parallel considerations

11  presented by the motion then at issue. Accordingly, Microsoft's Motion for Leave to File a Motion

12  for Reconsideration is denied.

13    **D.    Acer's Motion for Reconsideration and Asus's Motion for Reconsideration**

14    Both Acer's Motion for Reconsideration and Asus's Motion for Reconsideration are denied

15  for the same reasons as Microsoft's Motion for Reconsideration, on which they rely.

16  **IV.    CONCLUSION**

17    For the foregoing reasons, the Court GRANTS Docket Number 746, DENIES Docket Number

18  730 and the three Motions for Reconsideration, and GRANTS IN PART AND DENIES IN PART

19  Docket Number 727 and Microsoft's Motion to Strike.

20    IT IS SO ORDERED.

21

22  Dated: February 5, 2013

23

24

25

26                                    JOSEPH C. SPERO

27                                    United States Magistrate Judge

28

29

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

MEDIOSTREAM INC et al,

        Plaintiff,

v.

MICROSOFT CORPORATION et al,

        Defendant.

                            /

Case Number: CV11-02525 RS

**SEALED CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 5, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Byron W. Cooper
Byron Cooper, Esq.
530 Lytton Avenue
P.O. Box 1278
Suite 200
Palo Alto, CA 94302

Christina Rose Hollander
Farella Braun and Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104

George Frank Pappas
Covington and Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401

Hannah Lynn Cannom
Milbank Tweed Hadley & McCloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017

Henry C. Bunsow
Bunsow, De Mory, Smith & Allison LLP
55 Francisco Street, Suite 600
San Francisco, CA 94133

Holly Anne Hogan F
K&L Gates LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111

Joshua Jamison Parker
Baker Botts LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304

Joshua M. Masur
Turner Boyce LLP
2570 W El Camino Real, Ste 380
Mountain View, CA 94040

Mark C Scarsi
Milbank Tweed Hadley & McCloy - Los Angeles
601 South Figueroa Street
30th Floor
Los Angeles, CA 90017

Michael Kenneth Plimack
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA 94111-5356

Scott Schrader
Covington & Burling LLP
One Front Street, 35th Floor
San Francisco, CA 94111

Zaed Billah
Kenyon and Kenyon LLP
One Broadway
New York, NY 10004-1007

Dated: February 5, 2013

Karen L. Hom

Richard W. Wieking, Clerk
By: Karen Hom, Deputy Clerk

2